OCEAN VIEW AT LA PARGUERA, INC., VECINOS ISLEÑOS PARA UN DESARROLLO Y AMBIENTE (VIDAS), recurridos, y JUNTA DE PLANIFICACIÓN, agencia recurrida, *v.* PASCUAL GARCÍA-PROYECTO REINA DEL MAR, peticionario.

*Números:* CC-1999-891, CC-1999-893          *Resueltos:* 31 de marzo de 2004

546

*Daniel Martínez Oquendo* y *Benjamín Hernández Nieves*, abogados de la parte peticionaria; *Leonor Porrata Doria*, abogada de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

Nos corresponde determinar cuáles son los requisitos para que un proyecto cualifique como "desarrollo extenso", conforme a la Sec. 2.01 del Reglamento Núm. 4 de Zonificación de la Junta de Planificación de Puerto Rico, 23

R.P.R. sec. 650.1648(68) (1997). Además, nos toca resolver si esta agencia puede aprobar determinada consulta de ubicación mediante una "exclusión categórica", sin referirla a la Junta de Calidad Ambiental para que ésta certifique que el proyecto previsto no tiene un impacto ambiental significativo y que se puede obviar el trámite de evaluación ambiental, la determinación de impacto ambiental no significativo y la declaración de impacto ambiental.

## I

El 12 de junio de 1998, el Sr. Pascual García (el proponente) —por conducto de la firma Lombardo Pérez & Associates, y amparándose en la reglamentación vigente— presentó ante la Junta de Planificación de Puerto Rico (J.P.) la Consulta de Ubicación Núm. 98-57-0574-JPU. Dicha consulta se formuló con el fin de evaluar un proyecto residencial multifamiliar en el barrio La Parguera del pueblo de Lajas, a ubicarse en los solares 1, 2, 3 y 4 de la urbanización Villa del Caribe de ese municipio. Los terrenos, objeto de la consulta, se encuentran dentro de un distrito de Desarrollo Turístico Selectivo (D.T.S.).[1]

El proyecto en cuestión consta de cinco edificios de apartamentos, de tres niveles cada uno, para un total de cuarenta y cinco apartamentos. Asimismo, éste vislumbra un área para noventa estacionamientos, dos piscinas y un espacio para entretenimiento pasivo. Se estima que los trabajos de construcción se completarán en un período de diez meses y que el proyecto generará veinte empleos en su fase de construcción y diez en su fase de operación.[2]

---

[1] Para la definición de este tipo de distrito, véase la pág. 538, *infra*.

[2] El proyecto tiene un costo estimado de $3,500,000, a ser financiado por la banca privada. Véase Apéndice del Caso Núm. CC-1999-0893, pág. 49.

Como parte del proceso de consulta de ubicación ante su consideración, la J.P. requirió los comentarios de varias agencias gubernamentales. Conforme a ello, la Autoridad de Acueductos y Alcantarillados señaló que "la parte proponente deberá mejorar y/o hacer aportaciones para los sistemas de acueducto y alcantarillado sanitario existentes e instalar cloacas fuera del lugar del proyecto".[3]

Por su parte, la Autoridad de Carreteras informó que su programa de construcción para los próximos cinco años no vislumbraba proyecto alguno que afecte el desarrollo de referencia.[4] Además, señaló que se debería consultar al Municipio de Lajas en relación con los accesos por las vías municipales y que se deberían hacer las mejoras a la infraestructura vial.[5]

Asimismo, el Instituto de Cultura Puertorriqueña requirió un estudio arqueológico Fase 1-A y 1-B, mientras que la Autoridad de Energía Eléctrica no objetó de ningún modo la consulta de ubicación.[6]

El Departamento de Recursos Naturales, sin embargo, mantuvo en suspenso su aprobación e indicó a la J.P. lo siguiente:

> [e]l área propuesta ubica dentro de los límites del Área de Planificación Especial del Suroeste, Sector Parguera. En cumplimiento con la Ley sobre Política Pública Ambiental, Ley Núm. 9 del 18 de junio de 1973, se requiere la preparación de un documento ambiental, el cual deberá incluir, pero sin limitarse, entre otros, los siguientes aspectos:
> 1. Impacto del proyecto sobre el Área de Planificación Especial y el Bosque Estatal de Boquerón
> 2. Sistemas ecológicos a impactarse
> 3. Flora y fauna
> 4. Cuerpos de agua
> Una vez se presente el documento ambiental aquí solicitado,

---

[3] Apéndice del Caso Núm. CC-1999-0893, pág. 49.

[4] Íd.

[5] El Municipio de Lajas endosó el proyecto mediante carta de 3 de agosto de 1998. Apéndice del Caso Núm. CC-1999-0893, pág. 50.

[6] Íd., pág. 49.

el Departamento de Recursos Naturales y ambientales procederá a completar la evaluación de éste proyecto.[7]

Posteriormente, el 23 de febrero de 1999, la J.P. emitió una Declaración de Impacto Ambiental Negativa Interna, mediante la cual afirmó que el proyecto propuesto no representaba impacto ambiental adverso significativo y que cualificaba como exclusión categórica conforme a la Resolución Núm. R-87-10-1 de la Junta de Calidad Ambiental (J.C.A.).[8] Este documento no hizo referencia ni atendió los señalamientos del Departamento de Recursos Naturales.

Mientras tanto, Ocean View at La Parguera, Inc. (Ocean View) y la organización comunal denominada Vecinos Isleños para un Desarrollo y Ambiente Sanos (VIDAS) objetaron el proyecto porque, entre otras cosas:

> 1. trastoca el valor estético y la visibilidad del área;
> 2. no se ha realizado una declaración de impacto ambiental y no se ha cumplido con las disposiciones de la Ley de Política Pública Ambiental, *supra*;
> 3. los proponentes no han demostrado como se afectará el tránsito vehicular en el área;
> 4. antes de la toma de cualquier decisión se debe preparar un estudio ambiental abarcador sobre el impacto ecológico y ambiental del proyecto sobre el área.[9]

No obstante, la J.P. aprobó la consulta de ubicación mediante Resolución de 15 de abril de 1999.[10] Determinó, en esencia, que el proyecto residencial puede considerarse dentro de la zona propuesta (D.T.S.) por ser de Desarrollo Extenso, según definido en la Sec. 2.01 del Reglamento de Zonificación, Reglamento de Planificación Núm. 4 (23 R.P.R. sec. 50.1648(59)) (Reglamento de Zonificación). Además, la J.P. resolvió que el proyecto no tiene impacto ambiental significativo y que cualifica como una exclusión categórica conforme a la Resolución Núm. R-87-10-1 de la J.C.A., por lo que no era necesaria una Declaración de Impacto Ambiental (D.I.A.). Sin embargo, aunque la resolución hizo referencia a los comenta-

---

[7] Íd., pág. 8.

[8] Para la definición de "exclusión categórica", véase la pág. 541, *infra*.

[9] Véase el Apéndice del Recurso CC-1999-0893, pág. 50.

[10] Íd., pág. 48.

rios vertidos por la Autoridad de Acueductos y Alcantarillados, la Autoridad de Carreteras, la Autoridad de Energía Eléctrica, el Departamento de Recursos Naturales[11] y el Instituto de Cultura Puertorriqueña, *en ésta no se hizo constar los comentarios emitidos por la J.C.A. sobre el proyecto. Más aún, no se hizo constar siquiera si la J.P. refirió el asunto a la J.C.A. para su evaluación.*

Insatisfechos con la aprobación de la consulta, Ocean View y VIDAS presentaron un recurso de revisión ante el entonces Tribunal de Circuito de Apelaciones (T.C.A.). Alegaron que incidió la J.P. al autorizar un proyecto residencial multifamiliar en un distrito clasificado como D.T.S., sin obtener los comentarios y el endoso del Departamento de Recursos Naturales. Señalaron, además, que erró la J.P. al aprobar la consulta de ubicación sin que se hubiese realizado un estudio ambiental y al concluir que el proyecto cualifica como una exclusión categórica conforme a la referida Resolución Núm. R-87-10-1 de la J.C.A. Finalmente, indicaron que la J.P. incidió al aprobar el proyecto como un desarrollo extenso.

Mediante Sentencia de 13 de octubre de 1999, el T.C.A. revocó la consulta de ubicación aprobada por la J.P. Dicho foro determinó, en primer lugar, que la J.P. incidió al aprobar el proyecto propuesto como un desarrollo extenso, ya que entendió que éste no se enmarca dentro de la definición dada a esa clasificación en el Reglamento de Zonificación. Específicamente, concluyó que debido a la magnitud del proyecto (45 apartamentos), éste tenía que estar ubicado en un pueblo con una población urbana censal de sobre cuarenta mil personas. En consecuencia, teniendo Lajas una población urbana censal de escasamente 4,535 personas, se ubicaba fuera de la definición. El T.C.A. resolvió, además, que la J.P. erró al no acreditar los comen-

---

[11] Aunque la Junta de Planificación (J.P.) hizo referencia a que el Departamento de Recursos Naturales se encuentra evaluando el proyecto, ésta aprobó la consulta de ubicación sin atender los comentarios y las peticiones de dicho departamento.

tarios vertidos por el Departamento de Recursos Naturales y al no requerir un estudio ambiental adecuado. Sin embargo, dicho foro no varió la conclusión de la J.P. en cuanto a que el proyecto cualificaba como una "exclusión categórica".

Inconforme, el proponente presentó ante este Tribunal una petición de *certiorari* para formular lo siguiente:

1. Erró el Tribunal de Circuito de Apelaciones al dictar la sentencia cuya revocación se solicita por motivo de que la misma tuvo el efecto de revisar una determinación final, firme e inapelable de la Junta de Calidad Ambiental y obviando la presunción de corrección y legalidad que cobija a las determinaciones de los organismos administrativos, como lo fue en este caso la resolución que emitiera la Junta de Planificación el 15 de abril de 1999.(12)

2. Erró el Honorable Tribunal de Circuito de Apelaciones al revocar la resolución emitida por la Junta de Planificación el 15 de abril de 1999 bajo el fundamento de que el proyecto propuesto bajo la consulta número 98-57-0574-JPU, no cualificaba como una exclusión categórica conforme al Reglamento sobre Declaraciones de Impacto Ambiental de Puerto Rico. Petición de *certiorari* Núm. CC-1999-0891, pág. 7.(13)

Por su parte, la J.P. presentó ante nos el recurso de *certiorari* Núm. CC-1999-0893, señalando los errores siguientes:

1. Erró el Tribunal de Circuito de Apelaciones al concluir que este proyecto en un distrito de Desarrollo Turístico Selectivo ("DTS"), debía estar en un pueblo con una población censal de sobre cuarenta mil (40,000) personas.

2. Erró el Tribunal de Circuito de Apelaciones al concluir que en este proyecto debió realizarse el estudio ambiental requerido por el Departamento de Recursos Naturales y Ambienta-

---

(12) A la "determinación final" que el proponente se refiere es a la Resolución Núm. R-87-10-1, aprobada por la Junta de Calidad Ambiental (J.C.A.) el 2 de abril de 1987, mediante la cual, como veremos más adelante, ésta aprobó un listado de acciones adjudicativas de la J.P. como "exclusiones categóricas".

(13) El Tribunal de Circuito de Apelaciones (T.C.A.) no resolvió expresamente que el proyecto no cualificaba como "exclusión categórica". Dicho foro revocó la aprobación de la consulta de ubicación, porque entendió que la JP abusó de su discreción al aprobar el proyecto sin haberse realizado el estudio ambiental que recomendó el Departamento de Recursos Naturales.

les, por ser la agencia con el peritaje en cuanto al impacto ambiental, no bastando con determinar que se trataba de una exclusión categórica.

Por recurrir ambos peticionarios de la misma sentencia, consolidamos ambos recursos mediante la Resolución de 21 enero de 2000.

El 10 de diciembre de 1999, Ocean View presentó una solicitud de desestimación fundamentada en que el proponente, Sr. Pascual García, no había notificado con copia de su petición de *certiorari* a la Administración de Reglamentos y Permisos (A.R.Pe.) conforme lo requiere la Regla 39 del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI-A.([14]) La recurrida VIDAS se hizo eco de la petición de desestimación presentada por Ocean View. Véase la Moción Uniéndonos a la Solicitud de Desestimación y Reiterándola al Amparo de la Regla 32(b) del Reglamento del Tribunal Supremo, presentada el 13 de diciembre de 1999.

El proponente replicó a la solicitud de desestimación mediante un escrito presentado el 20 de diciembre de 1999. Éste reconoció que no notificó su solicitud de *certiorari* a A.R.Pe., pero que ello respondió a que dicha entidad no había intervenido como parte en el proceso de consulta de ubicación en controversia.

Por lo tanto, nos corresponde resolver, primeramente, como asunto jurisdiccional de umbral, si el proponente venía obligado a notificar a A.R.Pe. el recurso de *certiorari* que presentara ante nos. Es decir, ¿fue A.R.Pe. "parte" en el proceso de consulta de ubicación llevado a cabo ante la J.P.? Veamos.

---

[14] Dicha regla dispone que todo recurso que se presente ante nos se notificará a los abogados de las demás partes —o a las partes mismas si no tuvieren abogado— y que ello se hará constar en el propio escrito que se presente al Tribunal. El omitir la notificación a alguna parte del proceso de un escrito apelativo presentado ante este Tribunal, dentro del término dispuesto para ello, nos priva de jurisdicción para entender en el asunto. Véanse: *Montañez v. Policía de Puerto Rico*, 150 D.P.R. 917 (2000); *Const. I. Meléndez, S.E. v. A.C.*, 146 D.P.R. 743 (1998).

## II

Las recurridas Ocean View y VIDAS sustentan su solicitud de desestimación en el hecho de que el T.C.A. notificó una copia de la sentencia recurrida a todos los abogados de las partes y a A.R.PE. Asimismo, que tanto ellas (las recurridas) como los peticionarios (el proponente y la J.P.) notificaron a dicha agencia los escritos que sometieron ante el T.C.A. En consecuencia, alegan que todos estos factores le confirieron a A.R.PE. carácter de "parte" en el proceso de marras, por lo que la falta de notificación del recurso del proponente a ésta nos privó de jurisdicción para atenderlo.[15] No tienen razón las recurridas.

La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.) define el término "parte" como "toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir a participar en la misma". 3 L.P.R.A. sec. 2102(j). Sobre la extensión del concepto, hemos resuelto que, bajo el palio de la citada ley, "parte" es: (1) a quien se dirija la acción; (2) la agencia a quien se le dirige la acción; (3) el interventor; (4) quien haya presentado una petición para revisión o cumplimiento de orden; (5) quien haya sido designado como tal en el procedimiento, y (6) aquel que participó activamente durante el procedimiento administrativo y cuyos derechos y obligaciones puedan verse adversamente afectados por la acción o inacción de la agencia. *Lugo Rodríguez v. J.P.*, 150 D.P.R. 29 (2000). Una vez determinada, persona o entidad adquieren carácter de "parte", la Sec. 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172, y la Regla 39 de este Tribunal, *supra*, establecen que todo recurso que se presente ante nos se notificará a los abogados

---

[15] Véanse: 3 L.P.R.A. sec. 2172; Regla 39 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A.

de éstas, o a las partes mismas si no tuvieren abogado, y que ello se hará constar en el escrito que se presenta. Incumplir con este requisito dentro del término dispuesto para presentar el recurso conlleva la desestimación del recurso por falta de jurisdicción. Véase *Montañez v. Policía de Puerto Rico*, 150 D.P.R. 917 (2000); *Const. I. Meléndez, S.E. v. A.C.*, 146 D.P.R. 743 (1998).

Tras referirnos al expediente, constatamos que A.R.Pᴇ. no fue "parte" en el proceso de *consulta de ubicación* que aquí se impugna. Es decir, A.R.Pᴇ. no fue parte promovida, promovente, interventora o con participación activa en esta etapa del proceso. Si se examina la Resolución emitida por la J.P. el 15 de abril de 1999, se constatará que ésta se refiere a A.R.Pᴇ. para expresar que:

> 2) La Administración de Reglamentos y Permisos determinará cuál será la próxima etapa en el trámite del proyecto, la cual deberá cumplir con todas las disposiciones de leyes, reglamentos y normas de planificación vigentes y aplicables, así como con las normas de dicha Administración.[16]

Luego de ello, la J.P. explica que:

> [l]os señalamientos anteriores [conclusiones y acuerdo] se han hecho de la información disponible en estos momentos. No obstante, la Administración de Reglamentos y Permisos podrá hacer requerimientos adicionales que sean necesarios en el futuro, bien sea por situaciones que se desconocen ahora o imprevistas que pudieran surgir durante el desarrollo del proyecto en sus distintas etapas.[17]

De lo anterior surge que la mención que la J.P. hiciera de A.R.Pᴇ., fue en referencia a las instrucciones que la primera usualmente ofrece *para cuando dicha Administración asuma jurisdicción sobre el proyecto en la etapa operacional posterior.* Ello de ninguna manera puede interpretarse como una concesión de carácter de "parte" a

---

[16] Apéndice del Recurso Núm. CC-1999-0893, pág. 53.

[17] Íd., pág. 54.

A.R.Pᴇ. Del mismo modo, *el hecho de que una parte remita una copia de cortesía del recurso a determinada entidad —como alegan las peticionarias que hicieron con A.R.Pᴇ.— no convierte a esta última en "parte" para efectos de la notificación requerida por la L.P.A.U. y el Reglamento de este Tribunal.*

■　　Adviértase, además, que aun si la J.P. hubiese requerido comentarios de A.R.Pᴇ. a fin de informarse mejor en el proceso de consulta de ubicación —lo que no consta en el expediente que se haya hecho— ello de por sí no sería suficiente para convertir en "parte" a esa agencia. Según lo resuelto por este Tribunal en *Rivera Ramos v. Morales Blás*, 149 D.P.R. 672, 684–685 (1999), cuando la J.P. se limita a requerir los comentarios de alguna agencia que de alguna manera tenga relación con los proyectos bajo estudio, como lo permite la Sec. 7.01 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación,[18] dicha participación es insuficiente para concluir que se le tiene que notificar los escritos y determinaciones como si se tratase de una "parte". Por lo tanto, resolvemos que el recurso se presentó ante nos oportunamente y conforme a derecho.

### III

Resuelto esto, procedemos a dilucidar las controversias planteadas en los recursos que hoy nos ocupan, a saber: (1) si actuó correctamente el T.C.A. al determinar que la J.P. incidió al aprobar mediante la consulta de ubicación el proyecto propuesto como un Desarrollo Residencial Extenso; (2) si erró el T.C.A. al no variar lo resuelto por la J.P. en cuanto a que el proyecto cualificaba como una exclusión

---

[18] Reglamento Núm. 5244 de 31 de mayo de 1995 (23 R.P.R. sec. 650.234 (1997)). Este reglamento fue anulado por el Reglamento Núm. 6031 de 13 de octubre de 1999. Este último no altera lo dispuesto en la Sec. 7.01 del Reglamento Núm. 5244, *supra*.

categórica conforme a la Resolución Núm. R-87-10-1 de la J.C.A., y (3) si erró el T.C.A. al resolver que la J.P. abusó de su discreción al aprobar la consulta de ubicación sin contar con el endoso del Departamento de Recursos Naturales y a pesar de que dicho departamento expresó unas preocupaciones relativas al impacto ambiental del proyecto. Veamos las cuestiones planteadas por separado.

## IV

Nos corresponde determinar, en primer lugar, si erró el T.C.A. al resolver que el proyecto presentado no cualifica como un desarrollo extenso.

■ El Art. 11 de la Ley Orgánica de la Junta de Planificación, Ley Núm. 76 de 24 de junio de 1975 (23 L.P.R.A. sec. 62j(14)), según enmendada, faculta a la J.P. a hacer determinaciones sobre usos de terrenos dentro de los límites territoriales de Puerto Rico. Entre las determinaciones que la J.P. está facultada para tomar están las relacionadas a las solicitudes de consulta de ubicación.

■ La Sec. 2.01 del Reglamento de Zonificación, 23 R.P.R. sec. 650.1648(59), define la "consulta de ubicación" como el procedimiento mediante el cual la J.P. evalúa, pasa juicio y toma la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente mediante la reglamentación aplicable. Véase *Ortiz, Gómez et al. v. J. Plan*, 152 D.P.R. 8 (2000).

■ En el caso de marras, el proponente solicitó una consulta de ubicación para un proyecto residencial a ubicarse en un distrito D.T.S. El propósito de este distrito, según la Sec. 60.01 del Reglamento de Zonificación, *supra*, es facilitar la ubicación de proyectos turísticos y recreativos fuera de los ámbitos de expansión urbana, sujeto a la disponibilidad de infraestructura en el área y donde es necesario mantener el carácter paisajista y las condiciones

naturales del lugar. La Sec. 60.02 de dicho reglamento establece, además, que en un distrito D.T.S. los terrenos y edificios se podrán utilizar para los fines siguientes:

1. Siembra de productos agrícolas, crianza de animales y usos agroindustriales.
2. Vivienda para una (1) familia.
3. Venta la detal de productos cosechados en la finca siempre que el área de la estructura no exceda de doscientos (200) metros cuadrados.
4. Edificios y usos accesorios de acuerdo a las disposiciones de la Sec. 650.1731 de este título.
5. Otros usos de acuerdo a las Secs. 650.1742, 650.1744 y 650.1731 de este título. 23 R.P.R. sec. 650.1706.

La mencionada Sec. 97.00 del Reglamento de Zonificación, se refiere a los proyectos de desarrollos extensos que han de considerarse *por la J.P.*[19] A su vez, la Sec. 97.01 del citado Reglamento, *supra*, establece que se podrá someter a la consideración de la J.P. cualquiera de los tipos de proyectos que se indican en esta sección (desarrollos extensos) independientemente del distrito en que se propongan. Nótese, pues, que de acuerdo con estas disposiciones, el concepto desarrollo extenso puede aplicarse independientemente del distrito en que se proponga el proyecto; por consiguiente, los proyectos catalogados como desarrollos extensos son permitidos en los distritos D.T.S.

Sobre este tipo de desarrollos, la Sec. 2.01 del Reglamento de Zonificación, *supra*, los define de la manera siguiente:

[s]*on desarrollos extensos los desarrollos residenciales para veinte (20) o más familias o solares en pueblos o áreas con una población urbana censal menor de diez mil (10,000) personas*; treinta (30) o más familias o solares en pueblos o áreas con una población urbana censal entre diez mil (10,000) a cuarenta mil (40,000) personas, y cuarenta (40) o más familias o

---

[19] La Sec. 95.00 se refiere a proyectos de desarrollos extensos a considerarse por la J.P. o por la Administración de Reglamentos y Perisos (A.R.Pe.), y la Sec. 99.00 se refiere a las excepciones.

solares en pueblos o áreas con una población urbana censal sobre cuarenta mil (40,000) personas conforme a los resultados del último censo poblacional ....

El T.C.A. determinó que el proyecto en controversia no cualificaba como Desarrollo Extenso, toda vez que éste constaba de cuarenta y cinco apartamentos, por lo que se requería una población urbana censal de al menos cuarenta mil personas. Es decir, el T.C.A. aplicó al proyecto de marras el estándar mínimo de viviendas que se requiere para un pueblo con una población urbana censal de al menos 40,000 habitantes. Erró el T.C.A. al así resolver.

En la definición de "Desarrollo Extenso" antes citada, se establece el *número mínimo* de unidades a tomarse en consideración en los desarrollos residenciales a base de la población urbana censal del pueblo en que se propone el proyecto. En otras palabras, el mínimo de residencias se determina en función de la población urbana del pueblo. Por lo tanto, lo primero que hay que tomar en consideración es la población urbana censal del pueblo en cuestión para así determinar cuál es el *número mínimo* de residencias que se necesitan para ubicarse bajo la definición.

Así pues, en este caso tenemos un proyecto de cuarenta y cinco apartamentos a ubicarse en el pueblo de Lajas, de una población urbana censal de 4,535 según el censo de 1990. Por consiguiente, el proyecto cualifica como de desarrollo extenso, ya que el total de cuarenta y cinco apartamentos cumple con el número mínimo de viviendas necesarias (veinte o más) para un pueblo de menos de diez mil habitantes. Erró el T.C.A. al resolver lo contrario.

V

Procede ahora determinar si incidió el T.C.A. al no variar lo resuelto por la J.P. en cuanto a que el proyecto cualificaba como una exclusión categórica conforme a la Resolución Núm. R-87-10-1 de la Junta de Calidad Ambiental.

Las exclusiones categóricas se definen como acciones predecibles de una agencia proponente que en el curso normal de sus actividades no tendrán un impacto ambiental significativo. Véase Sec. 1.6.1 del Reglamento sobre Declaraciones de Impacto Ambiental de Puerto Rico, Reglamento Núm. 3106 de la Junta de Calidad Ambiental, 3 R.P.R. sec. 80.3 (Reglamento sobre DIA's).[20] Ubicada una acción dentro del marco de una "exclusión categórica", el Reglamento sobre DIA's, *supra*, exime a la agencia proponente de cumplir con sus Secs. 3, 4 y 5. En otras palabras, se entiende que las actividades así clasificadas no tienen un impacto ambiental significativo, por lo que pueden ser excluidas categóricamente de cumplir con el proceso de evaluación ambiental, determinación de impacto ambiental no significativo y declaración de impacto ambiental.

Mediante la Resolución Núm. R-87-10-1, emitida por la J.C.A. el 2 de abril de 1987, dicho organismo aprobó las siguientes acciones adjudicativas de la J.P. como de exclusión categórica:[21]

1. Prórrogas a la vigencia de consulta de ubicación aprobadas.
2. Enmiendas a consulta de ubicación ya aprobadas que no conlleve variación en las condiciones que tengan impactos ambientales significativos.
3. *Desarrollos de terrenos para uso residencial que no exceda de 50 unidades de vivienda;.*
4. Desarrollo de terrenos para uso comercial que no exceda de 15,000 pies cuadrados.
5. Desarrollo de terrenos para uso industrial liviano que no exceda de 70,000 pies cuadrados. Esto estará condicionado a que no apruebe proyectos para uso industrial que generen contaminantes con efectos significativos sobre el ambiente.
6. Desarrollo de terrenos para usos institucionales incluyendo proyectos para servicios de salud, escuelas, iglesias, clubes cí-

---

[20] El Reglamento sobre Declaraciones de Impacto Ambiental de Puerto Rico, Reglamento Núm. 3106 de la J.C.A., fue reemplazado por el Reglamento para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales, Reglamento Núm. 6056 de la J.C.A.

[21] Apéndice del Recurso Núm. CC-1999-0893, págs. 258–259.

vicos y otros similares que no excedan de 10,000 pies cuadrados.

7. Desarrollo de terrenos para usos turísticos que no excedan de 30,000 pies cuadrados. (Énfasis suplido.)

La J.P. sostuvo que debido a que el proyecto en controversia consta de cuarenta y cinco unidades para uso residencial, éste se ubica bajo el palio de la citada Resolución Núm. R-87-10-1 como una "exclusión categórica", *sin necesidad de trámite ulterior.* Dicha conclusión no encuentra base en el derecho aplicable. Veamos.

■ A pesar de lo dispuesto en la citada Sec. 1.6.1 del entonces vigente Reglamento sobre DIA's, *supra*, la Sec. 1.6.2 del mismo Reglamento aclara que la aprobación preliminar de una acción como "exclusión categórica" no exime a la agencia proponente de su responsabilidad de cumplir con las Secs. 3, 4 y 5 de ese instrumento —relativas a los procesos de evaluación ambiental, determinación de impacto ambiental no significativo y al proceso de declaración de impacto ambiental— *cuando en el ejercicio de su discreción, la J.C.A. entienda que es necesario.*[22] Más aún, la propia Resolución Núm. R-87-10-1 establece lo siguiente:

> [*l*]a *Junta de Planificación deberá someter a la Junta de Calidad Ambiental* la resolución de aquellas actividades que haya realizado y aquellos proyectos que hubiera aprobado que se encuentran bajo cualquiera de las categorías de exclusión aprobadas *como condición adicional* a la aprobación de estas exclusiones categóricas.
>
> *La Junta de Calidad Ambiental se reservará el poder que le confiere la Ley Número 9*, supra, *de pasar juicio sobre dichas acciones* y evaluará su cumplimiento con la Ley Sobre Política Pública Ambiental dentro del período de 20 días *de ser notificado de la acción por la Junta de Planificación* .... (Énfasis suplido.)[23]

---

[22] Asimismo, se condicionó la aprobación de una exclusión categórica a que la J.P. mantuviese en el expediente de los proyectos prueba de las consideraciones ambientales de los proyectos excluidos y del procedimiento de análisis ambiental.

[23] Apéndice del Recurso Núm. CC-1999-0893, pág. 259.

De las citadas disposiciones reglamentarias surge indubitadamente que la J.P. tiene que informar a la J.C.A. las acciones que han de realizarse bajo una exclusión categórica preliminarmente aprobada, de modo que ésta agencia —como ente encargado por ley para implementar la política pública de proteger el ambiente— evalúe las particularidades de ese proyecto y así determine si procede que se tramite el proceso de evaluación ambiental correspondiente. Es decir, el hecho de que determinada acción se encuentre enumerada como "exclusión categórica" por una agencia, no exime a ésta del deber adicional de referir a la J.C.A. cada proyecto que evalúa bajo dicha categoría para que esta úlmtima establezca si se requiere aplicar las Secs. 3, 4 y 5 del Reglamento sobre DIA's, *supra*.

No obstante, el T.C.A. expresó que "no surge del expediente que la Junta de Planificación hubiese consultado a la Junta de Calidad Ambiental" sobre el proyecto en controversia.[24] Asimismo, tras referirnos a la resolución emitida por la J.P. el 15 de abril de 1999 y estudiar los expedientes de ambos recursos, tampoco encontramos prueba que establezca que la J.P. informó a la J.C.A. del proyecto de marras para que ésta *cumpliera* con lo requerido por la ley para aprobar una "exclusión categórica". Erró la J.P. al así proceder.

La Sec. 4.5 de la L.P.A.U., 3 L.P.R.A sec. 2175, establece que "las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo", mientras que "las conclusiones de derecho serán revisables en todos sus aspectos". A tenor con este mandato, hemos establecido que si la agencia concernida observó rigurosamente los trámites prescritos por la ley, este Tribunal brindará deferencia a las acciones de ésta, salvo que haya actuado arbitraria, ilegal o en forma tan

---

[24] Íd., pág. 10.

irrazonable que su proceder hubiese constituido un abuso de discreción. Véase *Misión Ind. P.R. v. J.C.A.*, 145 D.P.R. 908, 929–930 (1998). Asimismo, hemos resuelto que, ante cuestionamientos mixtos de hecho y de derecho, nos corresponde resolver si la determinación administrativa es razonable y compatible con el propósito legislativo. *Rivera Concepción v. A.R.Pe.*, 152 D.P.R. 116 (2000).

Al aplicar esta normativa al caso de autos, no podemos ser deferentes ante la decisión de la J.P. de aprobar esta consulta de ubicación. Ello así toda vez que la omisión de referir la "exclusión categórica" a la J.C.A. —para que ésta determinara si, a su discreción, se requeriría la tramitación de un proceso de evaluación ambiental— fue contrario a lo expresamente dispuesto por el entonces vigente Reglamento sobre Declaraciones de Impacto Ambiental,([25]) *supra*, por la propia Resolución Núm. R-87-10-1 que la J.C.A. aprobó para la J.P. y, por ende, contrario al mandato del cuerpo legal sobre el cual ambas se sustentan: la Ley sobre Política Pública Ambiental, 12 L.P.R.A. sec. 1121 *et seq.*, según enmendada (Ley Núm. 9). Esta ley implementa, a su vez, el precepto constitucional que establece que "[s]erá política pública del Estado Libre Asociado la más eficaz conservación de los recursos naturales, así como el mayor aprovechamiento de los mismos para el beneficio general de la comunidad". Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 421.

---

([25]) El Reglamento para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales, Reglamento Núm. 6026 de la J.C.A., sustituto del Núm. 3106 de la misma agencia (Reglamento sobre DIA's, entonces vigente cuando se suscitó la controversia de autos) no alteró el requisito de presentar ante la J.C.A. el proyecto que habría de evaluarse como "exclusión categórica". *En todo caso, el lenguaje utilizado en el Reglamento Núm. 6026 es más explícito en cuanto a dicho requisito.* Véase la Sec. 234A de ese Reglamento, en la cual se expresa que:

"[*l*]*a agencia proponente informará a la Junta de Calidad Ambiental, caso por caso, las acciones a realizarse bajo exclusión categórica aprobada.* Esta notificación deberá certificar que la acción propuesta cumple con todas y cada una de las condiciones bajo las que tal exclusión fue concedida. Esta certificación será firmada por el jefe de la agencia, o la persona a la que éste le haya delegado tal autoridad, o por el funcionario responsable." (Énfasis suplido.)

El incumplimiento de la J.P. es particularmente sensitivo en este caso, toda vez que la Ley Núm. 9, *supra*, establece que *la J.C.A. es la agencia designada para velar por el fiel cumplimiento de la política pública ambiental y los requisitos procesales y sustantivos contenidos en ella misma (Ley Núm. 9) y en los reglamentos aprobados a su amparo. Mun. de Loíza v. Sucns. Suárez et al.*, 154 D.P.R. 333 (2001); *Colón y otros v. J.C.A.*, 148 D.P.R. 434 (1999); *García Oyola v. J.C.A.*, 142 D.P.R. 532 (1997). Así pues, la J.C.A. era la agencia dispuesta por ley para determinar si el proyecto en cuestión tendría un impacto ambiental significativo y, en consecuencia, establecer si el proyecto requería que se siguiese el trámite dispuesto por las Secs. 3, 4 y 5 del Reglamento sobre DIA's, *supra*.

En atención a que en este caso no se observaron rigurosamente los estatutos y reglamentos que rigen las funciones adjudicativas de la J.P. en torno a las "exclusiones categóricas",([26]) resolvemos que erró el T.C.A. al no decidir de conformidad.([27])

## VI

En mérito de lo anteriormente expuesto, resolvemos que erró el T.C.A. al determinar que el proyecto propuesto no cualificaba como desarrollo extenso, conforme al Reglamento de Zonificación de la J.P. Asimismo, concluimos que erró el foro intermedio al sostener que la consulta de marras podía aprobarse mediante "exclusión categórica," sin antes remitirla *a la J.C.A.* para que ésta determinara si había necesidad de cumplir con el proceso de evaluación ambiental, determinación de impacto ambiental no signifi-

---

([26]) Véase *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263 (1999).

([27]) En vista de que este curso decisorio dispone de la controversia, *quaere* si la J.P. abusó de su discreción al no actuar sobre los comentarios vertidos por el Departamento de Recursos Naturales sobre la consulta de ubicación.

cativo y declaración de impacto ambiental. Se revoca el dictamen recurrido y se devuelve el caso a la J.P. para que atienda el asunto conforme con lo expresado en esta opinión.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Hernández Denton se inhibió. El Juez Asociado Señor Rebollo López no intervino.