Miranda De Hostos, Juez Ponente
*833 TEXTO COMPLETO DE LA SENTENCIA
El recurrente Cabrera Grupo Automotriz, Inc. (en adelante Cabrera Automotriz), acude ante nos de una resolución emitida por el Departamento de Asuntos del Consumidor (en adelante DACO), que declaró con lugar-una querella instada en su contra sobre nulidad de contrato de compraventa de un vehículo de motor, por razón de dolo.
Alega, en síntesis, el recurrente que DACO incidió al declarar- con lugar la reclamación instada en su contra, a pesar que estaba prescrita y que no tenía jurisdicción para ello, y al concluir que había incurrido en dolo en la contratación.
Se confirma el dictamen administrativo emitido por DACO, por ser conforme a derecho. Veamos.
I
El 25 de mayo de 1999, la recurrida María Muñiz Rosado (en adelante Muñiz Rosado) adquirió de Cabrera Grupo Automotriz, un vehículo de motor marca Dodge, año 1999, modelo Durango, por el convenido precio de $32,900. Tal vehículo fue financiado a través de General Motors Acceptance Corporation (en adelante GMAC), pagos mensuales de $427.22 por 59 meses, último plazo a pagar de $10,000.
Como parte del trámite de adquisición, la recurrida firmó la factura número 04370, en la cual se indicaba que se tomaba un vehículo de motor en “trade-in” por la suma de $9,000, y se pagó la cantidad de $1,500 por-concepto de pronto. (Ap., pág. 63.) Se indicaba además que el balance adeudado era de $24,400 y la tasa de por-ciento anual era de 15% pagadero a 60 plazos, de los cuales se pagarían 59 plazos a razón de $427.22, con un último pago de $10,000. Asimismo, que la recurrida tendría un seguro “Full Cover Anual Universal” por la suma de $1,511.
En la misma fecha, la recurrida Muñiz Rosado firmó un contrato de venta al por menor a plazos, el cual expresaba el negocio llevado a cabo, y que el balance a financiar era de $22,400, con 60 plazos de los cuales se pagarían 59 plazos a razón de $424.79, con un último pago de $10,000. (Ap. XIV, pág. 64.) La recurrida firmó también la Declaración Informativa sobre Seguro, la cual indicaba que ningún seguro sería financiado, así como el anejo titulado opciones del comprador para efectuar el último pago. (Ap. XIV, pág. 66.)
Así las cosas, luego de haber efectuado el pago de los primeros 59 plazos, la recurrida recibió una llamada telefónica de parte de GMAC, solicitándole el pago del residual, correspondiente de $10,000. La recurrida les indicó que debían estar equivocados porque efectivamente acababa de realizar el último pago de la compra del vehículo. Según el testimonio de la recurrida, la empleada de GMAC le indicó que tenía el contrato en sus manos y que éste indicaba un pago final de $10,000. La recurrida le solicitó copia vía fax del contrato y al recibirlo, se percató que alegadamente el vendedor le había completado los documentos de una forma contraria a lo verbalmente pactado, con un pagó final de $10,000. (T.E., págs. 9-10.)
*834 Ante tales circunstancias, la recurrida y su esposo acudieron ante el propietario de Cabrera Automotriz para hablar de su situación y éste le indicó que habían prescindido de los servicios de tal vendedor, alegadamente debido a su continua práctica engañosa con los clientes. El 13 de julio de 2004, la recurrida devolvió la unidad en cuestión ante la insistencia de GMAC. (T.E., págs. 11-12.)
El 20 de julio de 2004, la recurrida Muñiz Rosado presentó querella ante DACO contra Cabrera Automotriz y GMAC. (Ap. I, págs. 1-2.) Alegó, en síntesis, que nunca recibió de GMAC documentación de financiamiento alguno, que luego de saldar el vehículo recibió una llamada telefónica de GMAC, informándole que el vehículo tenía un balance residual por pagar de $10,000 el cual vencía el 25 de mayo de 2004. Que objetó el pago debido a que no se le dijo que el vehículo estaba bajo un “leasing” y que recurrió a Cabrera Automotriz, pero no tomaron acción alguna.
Asimismo, alegó que al no poder la recurrida hacer el pago del residual, optó por entregar la unidad al banco el 13 de julio de 2004 y suscribió la “Declaración de Cesión Voluntaria de Vehículo de Motor”. (Ap. XIV, pág. 69.) Consecuentemente, la recurrida solicitó en su querella el reembolso de todas las mensualidades hechas al banco y otra cantidad que procediera en derecho. Además, que se le compense por todo el engaño de parte del vendedor y que se le entregue la unidad libre del residual de $10,000.
El 4 de enero de 2005, se notificó a las partes la celebración de una vista administrativa para dilucidar el asunto en controversia a celebrarse el 27 de enero de 2005. (Ap. II, págs. 3-4.) GMAC contestó la querella el 19 de enero de 2005, alegando, en síntesis, que la querella de la recurrida estaba prescrita. (Ap. III, págs. 5-6.) Además, GMAC compareció nuevamente el 23 de noviembre de 2005, mediante moción de desestimación, alegando que la recurrida renunció a cualquier acción judicial o extrajudicial en su contra, al entregar su vehículo, lo cual surge del documento de entrega del vehículo. (Ap. IX, págs. 26-40.) El recurrente Cabrera Automotriz compareció el 16 de noviembre de 2005, mediante moción de desestimación, alegando la prescripción de la causa de acción de la recurrida, debido al transcurso de cuatro años desde la compra del vehículo hasta la presentación de la querella. (Ap. VIII, págs. 16-25.) Asimismo, sometió contestación a la querella el 2 de febrero de 2006, alegando, en síntesis, que “la causa de acción está prescrita”. (Ap. XII, págs. 49-50.)
Luego de haber celebrado la vista administrativa y tomando en consideración la prueba presentada ante sí, DACO emitió resolución administrativa el 17 de mayo de 2007, mediante la cual declaró nulo el contrato de compraventa suscrito entre la recurrida Muñiz Rosado y el recurrente Cabrera Automotriz, por razón de dolo por parte de este último. (Ap. XIII, págs. 51-62.)
Inconforme con tal dictamen, el recurrente Cabrera Grupo Automotriz acude ante nos en revisión judicial.
II
Expuestos los hechos pertinentes, procedemos a discutir la norma jurídica aplicable.
A
Principios generales de los contratos
Los contratos son negocios jurídicos que existen desde que concurren los requisitos de: 1) consentimiento . de los contratantes; 2) objeto cierto que sea materia del contrato; y 3) causa de la obligación que se acuerde. Aid. 1213, Código Civil, 31 L.P.R.A. see. 3391. Véase, Colón v. Promo Motor Imports, Inc., 144 D.P.R. 659, 666 (1997).
El ordenamiento civil reconoce que si el consentimiento que se da por una de las partes al otorgar un contrato fue prestado por error, violencia, intimidación o dolo, éste será nulo y por ende el contrato. Art. 1217, *835 Código Civil, 31 L.P.R.A. see. 3404; Bosques v. Echevarría, 162 D.P.R. 830, 836 (2004). Cada una de estas modalidades que vician el consentimiento, se definen en el Código Civil de manera específica.
En cuanto al dolo como vicio en el consentimiento, éste constituye aquellas “palabras o maquinaciones insidiosas” de uno de los contratantes, para inducir al otro a celebrar el contrato. Art. 1221, Código Civil, 31 L. P.R.A. see. 3408. Aunque la jurisprudencia ha reconocido que no todo tipo de dolo, en particular el incidental, produce la nulidad del contrato, es el dolo grave el cual se define como la conducta que indujo a la otra parte a celebrar el contrato, el que constituye un vicio en el consentimiento que da lugar a su nulidad. Bosques v. Echevarría, supra; VELCO v. Industrial Serv. Apparel, 143 D.P.R. 243, 251 (1997).
El dolo no se presume y el que lo alega debe probarlo de manera que satisfaga la conciencia del juzgador que se cometió, como un vicio del consentimiento en el contrato. Miranda Soto v. Mena Eró, 109 D.P.R. 473, 478 (1980). Asimismo, nuestro Tribunal Supremo ha resuelto que pina determinar si hay dolo que anule el consentimiento de una de las partes, es necesario considerar entre otras cosas, la preparación académica del perjudicado así como su condición social y económica, y las relaciones y el tipo de negocio en que se ocupa. Colón v. Promo Motors Imports, Inc., 144 D.P.R. 659, 669 (1997).
B
Prescripción en acciones de nulidad de contratos
La prescripción es una figura de derecho sustantivo y constituye una forma de extinción de un derecho pol-la inercia de su titular en ejercitarlo. Tiene una utilidad social en la medida en que pretende eliminar la incertidumbre en las relaciones jurídicas al no dejar éstas al arbitrio de los particulares. Pudín v. Cía. Fom. Ind., 150 D.P.R. 403, 410 (2000); Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560, 566 (1995); Herminio Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, Publicaciones J.T.S., 1986, pág. 567.
El Artículo 1253 del Código Civil dispone el plazo prescriptivo para la acción de nulidad de contrato. El término prescriptivo dispuesto es de cuatro (4) años, en los casos que se alegue “error, o dolo o falsedad de la causa, desde la consumación del contrato”.
La norma jurídica vigente ha reiterado que “[L]a acción de nulidad por dolo prescribe a los cuatro años desde que se consumó el contrato”. García López v. Méndez García, 102 D.P.R. 383, 393 (1974); Girod Lube v. Ortiz Rolón, 94 D.P.R. 406, 415 (1967). Por ser la prescripción una defensa afirmativa hay que alegarla oportunamente, si no se entiende tácitamente renunciada. A tal fin, la referida defensa deberá exponerse en la alegación respondiente que se haga contra la reclamación. Álamo v. Supermercado Grande, Inc., 158 D.P.R. 93, 104 (2002); Qume Caribe, Inc. v. Srio. Hacienda, 153 D.P.R. 700, 712-713 (2001).
Desde el punto de vista procesal, el alto foro insular ha resuelto que las Reglas de Procedimiento Civil pueden ser utilizadas en el curso del proceso administrativo “cuando las mismas no sean incompatibles con dicho proceso y propicien una solución justa, rápida y económica”. Ind. Cortinera Inc. v. P.R. Telephone Co., 132 D.P.R. 654, 661 (1993); Pérez Rodríguez v. P.R. Park Systems, Inc., 119 D.P.R. 634, 640 (1987).
C
Alcances de la revisión judicial
En nuestra jurisdicción, el que impugna una decisión administrativa tiene el peso de la prueba para derrotar la presunción de corrección que a ésta le alberga y la obligación de demostrar que el dictamen es arbitrario, ilegal, irrazonable o no se sostiene por el expediente. Torres v. Junta Ingenieros, 161 D.P.R. 696, 708 (2004).
Es norma reiterada que se presume la corrección de los dictámenes de las agencias administrativas, y en *836 revisión, merecen el mayor respeto y deferencia. Sin embargo, éstas pueden ser variadas, modificadas o incluso revocadas, cuando no existe en la totalidad del récord, prueba sustancial que las sostenga. Comisionado v. Prime Life, 162 D.P.R. 334, 340-341 (2004); Mun. de San Juan, v. J.C.A., 149 D.P.R. 263, 280 (1999).
El foro intermedio apelativo, en su función revisora, debe analizar si la agencia administrativa recurrida, emitió su dictamen de manera razonable y conforme a derecho. Ocean View v. Reina del Mar, 161 D.P.R. 545, 563-564 (2004).
III
Aplicación de la norma jurídica
Según alega el recurrente, DACO incidió al declarar con lugar la reclamación instada en su contra, tras concluir que había incurrido en dolo en la contratación.
No le asiste la razón.
De la prueba admitida en evidencia, surge que el 25 de mayo de 1999, la recurrida Muñiz Rosado acudió a Cabrera Grupo Automotriz con el fin de adquirir un vehículo de motor, cuyo pago “fuera de menos de 500 dólares”, por razón que “no quería un pago muy alto”. “Mi preocupación era que ese vehículo nosotros pudiéramos pagarlo, además de disfrutarlo, pagarlo”. (T.E., pág. 8.) A base de tal solicitud, sostiene la recurrida que el vendedor le hizo todos los números y le dijo: “Mira esto es lo que te conviene, esto es lo que... lo que tú puedes pagar”. Y que como era tarde, el vendedor le dijo “no se preocupe señora que yo se lo entrego a la oficina de su esposo mañana”. Id.
Abundando sobre el consentimiento brindado por la recurrida al firmar el contrato de compraventa, de la prueba surge que:

“P. Le pregunto señora Muñiz si usted tuvo que firmar algún documento con relación a esa compra del vehículo.

R. Yo... yo firmé todos los papeles en blanco porque él me dijo: “Como es tarde y no se puede llamar a las oficinas de... de fmandamiento, este... como esto aquí, más o menos, es costumbre, esto no... o sea, no hay ninguna preocupación, váyase tranquila que... fírmeme aquí que yo mañana resuelvo todo esto y yo le entrego el vehículo a su esposo”, y... y así mimito (sic)fue, yo firmé confiada en... en lo que... basada en lo que él me había dicho de... de los pagos mensuales, que era mi interés básico, tener un vehículo y los pagos que fueran de menos de... que él me había dicho que eran cuatrocientos y pico.

P. Le pregunto, si en efecto, se le entregó esa unidad que usted describió a su esposo.

R. Sí, al otro día se la entregó.

P. Eh... ¿y usted tuvo forma de... de constatar lo que el vendedor le había indicado el día de la compraventa?

R. Bueno, este... yo... nosotros estábamos bien contentos con la compra, verdad, lo que yo pude constatar fue que la libreta que llegó a casa... los pagos, eran lo que él me había dicho que yo podía pagar.

P. O sea, que coincidía el pago de... que él le había mencionado con los cómputos, con la libreta de pago que se le había enviado a usted por correo.

R. Sí... ”.

*837 (T.E., págs. 8-9.)
A preguntas del Ledo. Guzmán González, abogado de Cabrera Automotriz, sobre porqué firmó el contrato a pesar del “Aviso al Comprador” de no firmar sin leerlo o si contenía espacios en blanco, la recurrida expresó que:

“Lo firmé bajo engaño, lo firmé porque él me dijo que esa... ellos estaban acostumbrados a hacerlo, que eso no había ningún problema, que no me preocupara, que lo firmara. Lincluso (sic) él me dijo: “No... no se apure que yo conozco a su esposo, yo le voy a entregar el vehículo a su oficina, quédese tranquila”, por eso me quedé tranquila. ”

(T.E., pág. 23.) •
Asimismo, respecto al documento del contrato de compraventa completado, la recurrida expresó que “No, no, yo nunca había visto eso, porque yo lo que firmé fue en blanco, yo nunca había visto ese contrato”. (T.E., pág. 10.)
Una vez la recurrida acudió donde el propietario de Cabrera Automotriz para dialogar sobre su situación, éste le admitió, según lo adjudicó DACO, que el empleado que le había vendido la unidad en cuestión, ya no estaba con ellos por razón que acostumbraba engañar a los clientes a fin de lograr ventas de vehículos. Según surge de la prueba creída por DACO:

“El [propietario de Cabrera Automotriz] se identificó, lo reconozco, se identificó y me dijo que lo lamentaba mucho, que el empleado ya no estaba porque el tenía uso y costumbre de hacer eso y que él había... ellos habían prescindido de sus servicios porque él estaba... había hecho eso en varias ocasiones. ”

A preguntas sobre porqué entregó la unidad a GMAC, la recuxxida sostuvo que luego de haber buscado las alternativas existentes para ver si podían quedarse con la unidad, “ellos me dijeron que, o pagarla completamente o refinanciarla”. (T.E., pág. 12.) Sobre el particular, la recurrida sostuvo que:

“Entonces yo me comunico con esta agencia, me reúno (sic) con la licenciada Beatriz Pérez, porque yo nunca había tenido una situación así, en mi vida, y ella me dice que... que procede, que el caso procede porque yo no conocía los derechos en este caso y entonces le expliqué que GMAC me decía que si... que... pues que yo tenía que devolver la... la unidad, y de hecho si yo no lo hubiera devuelto son tres años después que ocurre, cómo hubiera estado mi crédito, afectadísimo y... eso a nosotros... Además de afectamos el crédito, emocionalmente nos afecta porque nosotros somos personas de, de trabajo, mi esposo... en aquel entonces yo también verdad, Este... pues ya son tres años que el crédito se nos hubiera afectado mayormente. Ella nos dijo que sí, que procedía el caso, que devolviéramos la unidad y que después radicáramos. ”

(T.E., pág. 12.)
En cuanto a la experiencia de la recurrida en este tipo de transacciones, ésta aclaró que a pesar de su preparación académica, “nunca tuve la oportunidad de hacer una compraventa de un vehículo porque las empresas en donde yo trabajé siempre proveían el vehículo ”. Sostuvo que esa era su primera experiencia como compraventa de un vehículo, ya que en sus 20 años como propagandista médico “lo único que yo también hacía era firmar para coger el vehículo”. (T.E., pág. 24.)
A base de tal prueba creída por DACO, surge claramente que el empleado de Cabrera Automotriz que le vendió la unidad a la recurrida, incurrió en dolo al inducirle a celebrar el contrato de compraventa, mediante “palabras o maquinaciones insidiosas”. El expediente contiene evidencia sustancial que demuestra que tal *838 vendedor engañó a la recurrida al expresarle que tal unidad le convenía, pues el pago era cónsono con lo que ella podía pagar, menos de $500. Asimismo, el vendedor le engañó al orientarle que firmara el contrato en blanco, ya que era costumbre de la compañía, reiterando que el pago sería de $427.22 mensual durante el plazo de 5 años, y luego completar los documentos de una forma contraria a lo verbalmente pactado, con un pago final de $10,000.
Cabe señalar que en ningún momento el vendedor le informó a la recurrida sobre el residual de $10,000, a pesar que la recurrida le reiteró su interés y capacidad de obtener un pago mensual menor de $500. El omitir informarle a la recurrida sobre tal circunstancia tan importante del contrato, consistente de un residual de $10,000, constituye dolo grave. Por lo cual, concluimos que ante tal prueba de dolo grave por parte de un empleado de Cabrera Automotriz, procede se declare la nulidad del contrato de compraventa celebrado entre las partes litigantes, según lo resolvió DACO. Como foro intermedio apelativo, no podemos sustituir el criterio de DACO al adjudicar credibilidad a la prueba presentada.
Valga señalar, que a pesar de la recurrida haber firmado la “Declaración de Cesión Voluntaria de Vehículo de Motor por Ultimo Plazo de Pago ”, donde se expresa que renuncia a cualquier reclamación judicial “sobre la cesión voluntaria del vehículo ”, la naturaleza de su planteamiento en el caso ante nos es sobre la nulidad del contrato de compraventa suscrito con el recurrente Cabrera Automotriz, por lo que en nada afecta dicha cesión de la unidad, a su reclamación.
En cuanto al alegado error señalado por el recurrente Cabrera Automotriz sobre la prescripción de la acción de dolo instada por la recurrida, basta con señalar que tal defensa afirmativa no fue levantada en el momento oportuno. Como bien determinó DACO en su resolución, Cabrera Automotriz alegó por primera vez tal defensa de prescripción el 25 de noviembre de 2005, “luego de transcurrido un (1) año, cuatro (4) meses y cinco (5) días de radicada la querella”, por lo cual se entiende tácitamente renunciada.
IV
Por los anteriores fundamentos de derecho, se confirma el dictamen administrativo emitido por el Departamento de Asuntos del Consumidor, según sus términos y condiciones.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
María Elena Pérez Ortiz
Secretária del Tribunal de Apelaciones