El Juez Asociado Señor Martínez Torres
emitió la opinión de Tribunal.
Los peticionarios —A. Cordero Badillo, Inc. (ACB), Mil, Inc. (Mil) y Ponce Cash & Carry, Inc. (PCC)— nos solicitan la revocación de una sentencia emitida por el Tribunal de Apelaciones. En ésta, el foro apelativo intermedio confirmó una resolución emitida por la Junta de Planificación de Puerto Rico (Junta de Planificación). Confirmamos esa decisión y aclaramos a quiénes se les considera “partes” en el procedimiento administrativo.
I
El 24 de julio de 1998, D’Alessio Construction, Inc. presentó a la consideración de la Junta de Planificación la Consulta Núm. 98-67-0717-JPU para la ubicación de un proyecto comercial, en una finca con cabida de 21.08 cuerdas en el Municipio de Santa Isabel. El 23 de octubre de 1998, la Junta de Planificación emitió una resolución en la que determinó la necesidad de recibir los comentarios de diversas agencias y llevar a cabo una audiencia pública para escuchar los planteamientos de cualquier parte con interés sobre el proyecto.
El 15 de diciembre de 1998, la Junta de Planificación celebró una vista pública en el salón de asambleas de la Casa Alcaldía del Municipio de Santa Isabel. A ésta, por medio de su representación legal, comparecieron Mil y PCC. Al igual que Mil y PCC, varias agencias públicas, corporaciones públicas y privadas, así como personas particulares, acudieron a la vista pública.
En la vista, la representación legal de Mil y PCC solicitó que se les concediera un término de diez días para someter una ponencia escrita en oposición al proyecto. El escrito fue presentado el 28 de diciembre de 1998. El escrito titulado “Comparecencia de los Interventores” expresó, sin *182 más, que éstas solicitaron en la vista pública que fueran consideradas como partes interventoras. En éste, expuso varias razones para denegar la autorización del proyecto, pero no fundamentó las razones para conceder la intervención. Apéndice de la Petición de certiorari, págs. 90-91.
El 10 de febrero de 1999, la Junta de Planificación aprobó la consulta solicitada e hizo alusión al escrito presentado por Mil y PCC. Determinó, para entonces, que la consulta propuesta estaba en armonía con los objetivos y la política pública del Plan de Usos y Terrenos de Puerto Rico. La Junta de Planificación estableció una serie de condiciones para la aprobación del proyecto comercial y definió la propuesta de cien mil pies cuadrados como sigue:
a) Edificio comercial de 60,000 pies cuadrados para establecer un supermercado de 31,500 pies cuadrados; una mueblería de 20,000 pies cuadrados y una farmacia de 8,500 pies cuadrados.
b) Edificio independiente para ocho (8) salas de teatro con capacidad para 250 personas cada una, área de ventas de boletos y golosinas, con un área total de 20,000 pies cuadrados.
c) Cuatro (4) estructuras independientes de 5,000 pies cuadrados, tres de las cuales serán para restaurantes de comida rápida con su correspondiente servicarro y una será para un banco, también con su auto servicio. Apéndice del Alegato en oposición, pág. 19.
En esta resolución se informó el derecho de cualquier parte afectada por la decisión para solicitar reconsideración de la decisión ante la Junta de Planificación y la revisión judicial posterior, con sus respectivos términos. La Junta de Planificación notificó esta decisión a diversas agencias y corporaciones públicas, a los invitados a la vista pública (colindantes, agencias y funcionarios públicos) y a quienes comparecieron a ella. Surge del expediente que Mil y PCC fueron notificadas de la resolución. Apéndice del Alegato en oposición, págs. 28-32 y 64. Ninguna parte so *183 licitó reconsideración o revisión judicial de la resolución emitida por la Junta de Planificación.
El 27 de abril de 1999, D’Alessio Construction, Inc. solicitó la primera enmienda a la consulta autorizada. El 7 de mayo de 1999, la Junta de Planificación emitió una resolución en la que aprobó cambios a la autorización original y le añadió una nueva condición. La consulta enmendada describió los cambios al proyecto consultado. Primero, redujo el área del supermercado a veinticinco mil pies cuadrados, ubicó la farmacia en un edificio independiente, y utilizó el sobrante para una mueblería y otros locales. Segundo, dividió uno de los locales que originalmente fue propuesto como restaurante de comida rápida en dos locales para el mismo uso. Del expediente no surge que esta resolución fuera notificada a Mil y PCC.
El 12 de mayo de 2000 se solicitó una segunda enmienda a la consulta aprobada. En esta solicitud de enmienda se adicionaron al proyecto tres cuerdas de terreno y se añadió una estructura de cuarenta mil pies cuadrados para comercio al detal, con una segunda planta de veinte mil pies cuadrados para alquiler de oficinas. En esa enmienda se destinó un área de estacionamiento mayor a la requerida por la reglamentación. El 8 de junio de 2000, la Junta de Planificación dejó en suspenso la consulta para dar paso a una evaluación más profunda. Esta resolución fue notificada por instrucción específica como “copia de cortesía a todas las personas cuyos nombres y direcciones obran en el expediente”. Apéndice del Alegato en Oposición, pág. 97. En el certificado de notificación que obra en el expediente administrativo se señaló que esta resolución fue notificada, entre otros, a los “[c]olindantes y [v]ecinos” y a las “[p]ersonas que [asistieron a [la] Vista Pública”. Apéndice del Alegato en oposición, pág. 98. Además, esta vista fue anunciada mediante aviso en un periódico de circulación general el 12 de septiembre de 2000. Apéndice del Alegato en oposición, pág. 149.
*184 A estos efectos, el 27 de septiembre de 2000, la Junta de Planificación celebró una vista pública'. A esta vista ninguna de las peticionarias acudió. El 30 de noviembre de 2000, la Junta de Planificación aprobó por resolución las enmiendas solicitadas, con las condiciones requeridas por las agencias pertinentes del gobierno. Surge de la resolución de la Junta de Planificación que no se generó oposición a la enmienda solicitada. Para entonces, la consulta aprobada contemplaba un proyecto comercial de dieciséis mil pies cuadrados. Esta resolución fue notificada a Mil y PCC. Apéndice del Alegato en oposición, pág. 170.
El 8 de marzo de 2001, la Junta de Planificación aprobó una tercera solicitud de enmienda para redistribuir los veinte mil pies cuadrados destinados a oficinas en la segunda enmienda. Ahora este espacio sería destinado a la venta de servicios, piezas y mecánica liviana de vehículos de motor. Estos servicios se prestarían en una estructura independiente. Esta tercera enmienda aprobada por la Junta de Planificación fue notificada mediante copia de cortesía a Mil y PCC. Apéndice del Alegato en oposición, págs. 212 y 215.
Posteriormente, el 7 de noviembre de 2003, se solicitó una cuarta enmienda al proyecto. La enmienda consistía en redistribuir el uso destinado a las instalaciones ya aprobadas. A estos efectos, se propuso sobre el área de cien mil pies cuadrados aún no construidos que: ochenta mil doscientos setenta y siete pies cuadrados se utilicen para expandir el área destinada para el supermercado, seis mil pies cuadrados para tres restaurantes de comida rápida y los restantes quince mil trescientos cuarenta y cuatro pies cuadrados para el negocio de mantenimiento y la venta de piezas para autos. Para esta fecha, el proyecto contaba con alrededor de sesenta mil pies cuadrados ya construidos. El 5 de diciembre de 2003, la Junta de Planificación aprobó la enmienda solicitada, con una serie de condiciones para cumplir con la reglamentación aplicable.
*185 Entonces, el 4 de febrero de 2004, ACB, Mil y PCC, por conducto de una nueva representación legal (en el caso de Mil y PCC), presentaron una moción de reconsideración ante la Junta de Planificación. Esta comparecencia fue la primera intervención de ACB en el proceso ante la Junta de Planificación. La moción se tituló “Moción de Reconsideración, Intervención, Oposición, Revocación y Desestimación de Consulta de Ubicación”. Apéndice de la Petición de certiorari, pág. 93. En esta moción, las peticionarias alegaron que la resolución no le fue notificada a Mil y PCC a pesar de “haber comparecido como interventores durante el proceso”. Id. Además, se cuestionó la procedencia de la aprobación a la cuarta enmienda (en relación con el supermercado). Las peticionarias ACB, Mil y PCC argüyeron que la cuarta enmienda debió solicitarse como una nueva consulta de ubicación y que la consulta original no tenía vigencia.
El 19 de mayo de 2004, la Junta de Planificación atendió las oposiciones a la aprobación de la cuarta enmienda (entre las cuales se encontraba la de las peticionarias). En su resolución, la Junta de Planificación aprobó la solicitud de intervención de las peticionarias y declaró “no ha lugar” la reconsideración. La resolución fue notificada a las peticionarias ACB, Mil y PCC, así como a otros interesados, que igualmente fueron declarados interventores en la resolución que atendió la reconsideración. Apéndice del Alegato en oposición, págs. 261, 263 y 268.
Las peticionarias ACB, Mil y PCC acudieron al Tribunal de Apelaciones y, el 21 de octubre de 2005, ese foro confirmó la resolución recurrida. Inconformes con esta decisión, ACB, Mil y PCC acuden ante nos y solicitan su revocación. Al presente, el proyecto impugnado se encuentra operando con el nombre de Plaza Santa Isabel.
En síntesis, las peticionarias alegan que: (1) se le ha violado su derecho a un debido proceso de ley, pues ni la Junta de Planificación ni el proponente, le notificaron sus *186 solicitudes de enmiendas y resoluciones respectivamente, cuestión imprescindible por su calidad de interventor; (2) no procedía la aprobación de la cuarta enmienda, porque faltaba información necesaria para concederla; (3) la consulta de ubicación aprobada había caducado para la fecha de la solicitud de la cuarta enmienda; (4) por lo tanto, la cuarta enmienda debía ser tramitada en un proceso de consulta nueva; (5) la resolución en la que se aprobó la cuarta enmienda está incompleta.
Expedido el auto de certiorari y con el beneficio de la comparecencia de las peticionarias (ACB, Mil y PCC), de la Junta de Planificación y de Plaza Santa Isabel, procedemos a resolver el recurso.
II
 A. La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.) contiene un cuerpo de reglas para conducir el comportamiento de las agencias no exceptuadas por dicha ley. Sec. 1.2 de Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101); Rivera v. Morales, 149 D.P.R. 672 (1999).
En el contexto de la revisión judicial de una determinación administrativa, “ ‘los tribunales tenemos el deber de fiscalizar rigurosamente las decisiones de dichas agencias, para asegurar que desempeñen cabalmente sus importantísimas funciones, y para que el País no pierda la fe en sus instituciones de gobierno’ ”. Empresas Ferrer v. A.R.Pe., 172 D.P.R. 254, 263-264 (2007), citando a Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 700 (2000). Ahora bien, las decisiones que emiten las agencias de gobierno merecen una amplia deferencia y respeto, ya que éstas poseen una vasta experiencia y un conocimiento especializado sobre los asuntos que por ley se les ha delegado.
Según la L.P.A.U., las determinaciones de hechos de una agencia se sostendrán si se fundamentan en *187 evidencia sustancial que obre en el expediente administrativo. See. 4.5 de la L.P.A.U., 3 L.P.R.A. sec. 2175. Procede revocar una determinación de hecho de una agencia, sólo cuando resulte irrazonable o cuando se actuó de forma arbitraria o ilegal. Fuertes y otros v. A.R.Pe., 134 D.P.R. 947 (1993). A estos fines, evidencia sustancial es aquella relevante que una mente racional podría entender como adecuada para sostener una conclusión. Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004). Por lo tanto, una decisión administrativa goza de una presunción de legalidad y corrección que debe respetarse, mientras la parte que las impugna no demuestre con suficiente evidencia que la decisión no está justificada. Id.; Henríquez v. Consejo Educación Superior, 120 D.P.R. 194 (1987).
Por otra parte, las conclusiones de derecho serán revisadas en todos sus aspectos. See. 4.5 de la L.P.A.U, supra; Padín Medina v. Adm. Sist. Retiro, 171 D.P.R. 950 (2007). No obstante, los tribunales no pueden descartar libremente las conclusiones e interpretaciones de la agencia. Martínez v. Rosado, 165 D.P.R. 582 (2005). Igualmente, merece gran deferencia y respeto la interpretación razonable de un estatuto que hace el organismo que lo administra y del cual es responsable. íd. Aun en casos dudosos en los que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial. De Jesús v. Depto. Servicios Sociales, 123 D.P.R. 407, 417-418 (1989). Esta deferencia cede cuando la decisión afecta derechos fundamentales, resulta irrazonable o conduce a la comisión de una injusticia. Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881 (1999).
B. La L.P.A.U. define el término “parte” de la manera siguiente:
Parte.—Significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para *188 la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento. Sec. 1.3(j) de la L.P.A.U., 3 L.P.R.A. sec. 2102(f).
Esta disposición ha suscitado controversia a la hora de determinar quién es parte para efectos de notificación de la decisión administrativa o para solicitar una revisión judicial. Existe un problema al definir quiénes pueden reclamar ser parte, pero que no son promoventes o promovidos. D. Fernández Quiñones, Derecho administrativo y la Ley de Procedimiento Administrativo Uniforme, Colombia, Ed. Forum, 2001, sec. 8.12, pág. 500. Hemos reconocido que existen circunstancias “en las que la determinación de quién es parte en un proceso administrativo resulta una labor compleja”. Rivera v. Morales, supra, pág. 683. El concepto “parte” incluye: (1) la persona a quien se dirige la acción; (2) la agencia a quien se dirige la acción; (3) el interventor; (4) quien ha presentado una petición para la revisión o el cumplimiento de la orden; (5) la persona designada como tal en el procedimiento, y (6) quien participó activamente durante el procedimiento administrativo, y cuyos derechos y obligaciones pueden verse afectados adversamente por la acción o inacción de la agencia. Ocean View v. Reina del Mar, 161 D.P.R. 545 (2004).
Este Tribunal, consciente de la aplicación errónea del concepto “parte” en algunas agencias, sostuvo en Junta Dir. Portofino v. P.D.CM., 173 D.P.R. 455 (2008), que no es suficiente para ser considerado “parte” que a una persona se le haya notificado de la resolución administrativa. Sigue siendo determinante la distinción entre el mero participante y el participante activo. Id.
En ocasiones anteriores, este Tribunal ha tenido que delimitar el concepto “parte” en los casos de intervención o por participación. En ambos casos, se trata de definir quién tiene facultad para reclamar en calidad de “parte” su participación en un proceso administrativo.
*189 La intervención “es el mecanismo procesal para que una persona que no fue parte original en un procedimiento, pueda defenderse de la determinación administrativa”. Asoc. Residentes v. Montebello Dev. Corp., 138 D.P.R. 412, 420 (1995). El interventor se define así en la L.P.A.U.:
Interventor.—Significa aquella persona que no sea parte original en cualquier procedimiento adjudicativo que la agencia lleve a cabo y que haya demostrado su capacidad o interés en el procedimiento. Sec. 1.3(e) de la L.P.A.U., 3 L.P.R.A. see. 2102(e).
Una solicitud de intervención debe hacerse por escrito y fundamentada debidamente. Comisión Ciudadanos v. G.P. Real Property, 173 D.P.R. 998 (2008); Rivera v. Morales, supra, pág. 687. En ese escrito, una persona natural o jurídica que solicita ser considerada parte interventora debe demostrar su capacidad o interés sustancial en el procedimiento.
La L.P.A.U., en lo pertinente, dispone:

Intervención-Solicitud

Cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento. La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración entre otros los siguientes factores:
(a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.
(b) Que no existan otros medios en derecho para que el peticionado puedá proteger adecuadamente su interés.
(c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.
(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.
(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.
(f) que el peticionario represente o sea portavoz dé otros grupos o entidades de la comunidad.
*190 (g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.
La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención. (Énfasis suplido.) See. 3.5 de la L.P.A.U., 3 L.P.R.A. see. 2155.
La agencia tiene el deber de notificar su denegatoria a una solicitud de intervención con sus respectivos términos de revisión. See. 3.6 de la L.P.A.U., 3 L.P.R.A. sec. 2156. Además, la denegatoria a intervenir en un proceso administrativo es una cuestión de derecho que es revisable sin limitación por los tribunales. San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374 (2001).
En una vista pública para considerar una consulta de ubicación, por lo general, se permite participar a personas y entidades que desean expresarse sobre un proyecto en particular, pero esto no necesariamente las convierte en partes o interventores. Rivera v. Morales, supra, pág. 688. Además, hemos expresado que el hecho de que una persona o entidad remita una copia de cortesía o que la agencia notifique su resolución a determinada persona natural o jurídica, no convierte a éstas en “partes” en el proceso administrativo. Junta Dir. Portofino v. P.D.C.M., supra; Ocean View v. Reina del Mar, supra; Rivera v. Morales, supra.
Es parte, aquel que puede demostrar el efecto adverso o menoscabo que le puede causar a sus derechos una decisión administrativa. Fernández Quiñones, op cit., págs. 142-143. No todo el que provee información sobre una consulta de ubicación “automáticamente pasa a ser ‘parte’ en el proceso”. Lugo Rodríguez v. J.P, 150 D.P.R. 29, 42 (2000). En algunas instancias, el interés económico de un competidor podría ser base para conceder una solicitud de intervención. San Antonio Maritime v. P.R. Cement Co., supra.
En Rivera v. Morales, supra, decidimos que no *191 tiene el carácter de interventor un participante que se limitó a solicitar el expediente administrativo y a enviar una carta para expresar sus preocupaciones sobre un proyecto. Por esto, resolvimos que la agencia no tenía la obligación de notificarle su decisión a este participante como si fuera una parte. Hay diferencia entre una persona natural o jurídica que participó en el procedimiento administrativo y una parte afectada para solicitar una revisión judicial. Participan en el proceso administrativo no le asegura legitimación a esa persona para la intervención judicial. Fernández Quiñones, op. cit., pág. 500. Véase, además, la opinión disidente del Juez Presidente Señor Hernández Denton, a la que se unió el Juez Asociado Señor Rivera Pérez en Comisión Ciudadanos v. G.P. Real Property, supra; Junta Dir. Portofino v. P.D.C.M., supra.
En Lugo Rodríguez v. J.P., supra, pág. 43, resolvimos que “no sólo el promovente, el promovido y el interventor y aquel designado como tal se consideran ‘parte’ en un procedimiento administrativo”. Allí determinamos que también son “partes” las personas cuyos derechos y obligaciones se pueden ver afectados por el proceso administrativo y participan activamente en los procesos ante la agencia. Ahora bien, para determinar cuál participante debe ser considerado como parte y cuál no, es preciso distinguir al participante activo del mero participante. El mero participante se limita a comparecer a la audiencia pública o declara en ella sin mayor intervención.
En aquella ocasión concluimos que no se consideran “parte” a los efectos de notificar copia de los recursos de revisión: (1) el mero participante; (2) el amicus curiae-, (3) el que comparece a las vistas públicas sin mayor intervención; (4) el que declara en la vista sin demostrar interés ulterior; (5) el que se limita a suplir evidencia documental, y (6) el que no demuestra tener un interés que pueda verse adversamente afectado por la decisión administrativa. Lugo Rodríguez v. J.P., supra, pág. 44. Debido a esto, deci *192 dimos que no debía ser considerado “parte” un participante que no solicitó intervención y cuya participación se limitó a oponerse por escrito. Por otro lado, reconocimos que era “parte” otro participante que, aunque no presentó una solicitud de intervención: estuvo activo en el proceso, ya que procuró defender su interés mediante un interdicto provisional y permanente, sometió ponencias, presentó réplicas a la moción de reconsideración ante la Junta de Planificación, fue notificado de los escritos de las partes y que compareció a las audiencias públicas.
Una participación activa requiere una intervención más abarcadora. Quien reclame ser “parte” debe demostrar que tiene un interés reconocido en la decisión, comparece a las vistas y presenta oralmente y por escrito su posición; además, asume un rol activo. Lugo Rodríguez v. J.P., supra, págs. 43-44. Un participante activo utiliza los remedios disponibles para proteger su interés. Por lo tanto, “resultaría injusto y arbitrario no considerarlo una ‘parte’ ”. Id., pág. 44. Véase, además, Comisión Ciudadanos v. G.P. Real Property, supra.
Se encuentra firmemente establecido que una parte, que interese intervenir en un proceso administrativo, tiene que presentar su solicitud por escrito y fundamentada. Sin embargo, el reconocimiento de una persona natural o jurídica como “parte” en un proceso administrativo por razón de su grado de participación, ha creado confusión e incertidumbre en las agencias y en los foros judiciales. Véanse: Comisión Ciudadanos v. G.P. Real Property, supra; Junta Dir. Portofino v. P.D.C.M., supra; Residentes La Concepción v. J.P., 167 D.P.R. 486 (2006); Lugo Rodríguez v. J.P., supra. Esta confusión surge debido a que la doctrina de participante activo, como se implantó en el pasado, introdujo a nuestro derecho administrativo figuras extrañas a nuestra ley, fuera de contexto y de dudosa ayuda para guiar la función administrativa. Véase W. Vázquez Irizarry, El Tribunal Supremo de Puerto Rico: Análisis del Tér *193 mino 2007-2008, Derecho Administrativo, 78 Rev. Jur. U.P.R. 571, 590-591 (2009). Según el Prof. William Vázquez Irizarry, no se “justifica mantener una norma subjetiva para determinar quién es parte a los efectos de notificar la decisión final y el recurso judicial”. Id., pág. 599.
Por eso, es menester establecer que una persona natural o jurídica, que se encuentre participando activamente en un proceso administrativo y que desee ser considerada “parte” con todo lo que ello implica para los fines de revisión de la decisión administrativa, debe hacer una solicitud formal al respecto, debidamente fundamentada. Esto es, el interesado deberá hacer una solicitud formal en la que demuestre claramente cómo se verá afectado su interés por la decisión administrativa. Esta solicitud deberá hacerse por escrito, para establecer claramente el deber de la agencia de contestarla, también por escrito. Con estos requisitos se evita la incertidumbre de quién es parte y por consiguiente, a quién hay que notificarle cualquier solicitud de revisión judicial. Sólo se le requiere la presentación de un escrito a la parte que esté interesada verdaderamente. El profesor Vázquez Irizarry sostiene que esta postura “tiene la virtud de brindar certeza a la notificación y superar así un análisis subjetivo respecto a los niveles de participación de cada persona en el proceso”. Vázquez Irizarry, supra, pág. 596.
Los planteamientos de que esta alternativa pudiera ser onerosa o muy formal para las partes que intervienen en un procedimiento administrativo expresan, en realidad, una inconformidad con la L.P.A.U. Requerirle al participante activo lo ya requerido por la propia L.P.A.U. al interventor no puede considerarse “un formalismo que resulta lesivo a una política de apertura de los procedimientos... [ya que] existen maneras de conciliar las mismas con las virtudes del mecanismo de intervención”. Vázquez Irizarry, supra, pág. 605. “Esto se logra si la agencia actúa de forma proactiva”, no debemos arrogamos esa facultad, pues le *194 debemos deferencia a las otras ramas de gobierno. íd. Evidentemente, en nuestro sistema de gobierno la Asamblea Legislativa es la que crea y enmienda las leyes. La L.P.A.U., como fue aprobada, no contempla la figura del participante activo.
Estas expresiones son cónsonas con el marco legal de la L.P.A.U. Estos requisitos son idénticos a los que la ley exige a toda parte interventora. See. 3.5 de la L.P.A.U., 3 L.P.R.A. see. 2155. De esta manera, se asegura que una persona que demuestre tener la capacidad y el interés necesarios pueda ser notificada oportunamente de los procedimientos de revisión de una determinación administrativa. Además, se le brinda la oportunidad a la agencia administrativa para que aplique sus conocimientos en la determinación de qué personas, naturales o jurídicas, deben ser consideradas como partes a estos fines. Claro está, la persona adversamente afectada con esta decisión, que reclame que se le considere como parte, puede procurar una revisión judicial. Ese es el mismo trámite disponible para quienes reclamen ser interventores. Véanse: Sec. 1.3(e) de la L.P.A.U., 3 L.P.R.A. sec. 2102(e); Sec. 3.6 de la L.P.A.U., 3 L.P.R.A. see. 2156.
No debemos olvidar que la certidumbre sobre quién debe ser considerado “parte” para la revisión judicial es esencial. La incertidumbre en este extremo es “devastadora”, pues la omisión de notificar a una de las partes “priva al foro apelativo de jurisdicción y conlleva la desestimación irreversible del recurso”. Vázquez Irizarry, supra, pág. 587. Por lo tanto, “[e]s precisamente a la luz de esta consecuencia que resulta tan importante que los criterios a base de los cuales se identifican a las partes sean claros y preferiblemente objetivos. Estamos ante un tipo de situación en que la certeza es una virtud”. Id.
Nuestras expresiones en Junta de Dir. Portofino v. P.D.C.M., supra, es “sin lugar a dudas un paso de avance”, pero se ha criticado que entonces “el problema no se entend[ió] a plenitud, y la solución no esclarece todo lo que *195 requiere aclaración”. Vázquez Irizarry, supra, pág. 598. En relación con la diferencia entre la participación a nivel administrativo y el concepto “parte” para la revisión judicial, la confusión permanece, así como los problemas que acarrea la referida distinción”. Id., pág. 599. Por lo tanto, “no [se] justifica mantener una norma subjetiva para determinar quién es parte a los efectos de notificar la decisión final y el recurso judicial”. íd. De hecho, el profesor Vázquez Irizarry señala “que mía posible razón para que la agencia en este caso [Junta de Dir. Portofino v. P.D.C.M., supra,] optara por notificar su decisión final a treinta y siete (37) personas, pudo haber sido precisamente una reacción a lo inmanejable de los criterios de distinción entre el mero participante y el participante activo”, id.
La solución que hoy establecemos atiende este problema. Lo contrario sería atender una preocupación legítima en el contexto incorrecto. El asunto planteado no es la “participación ciudadana en [los] procesos administrativos pues eso nunca estuvo en disputa”. Vázquez Irizarry, supra, pág. 595. El problema ante nos es cómo identificar “aquellos con el nivel de interés necesario para calificarlos como partes y reconocerlos como tales en las fases apelativas”. Id.
No nos cabe duda de que la participación en un proceso administrativo es deseable y necesaria. Nadie le está cerrando las puertas a esa participación ciudadana. De lo que se trata es de no confundir “una visión liberal y progresista a favor de la participación” con un problema distinto, a saber, quién es “parte”, con los efectos que esa determinación conlleva para la notificación y revisión de las decisiones administrativas. Vázquez Irizarry, supra, pág. 591. El profesor Vázquez Irizarry concluye muy convincentemente que la solución que adoptamos en el pasado y que ha causado confusión e incertidumbre, aunque bien intencionada, “estuvo mal concebida y no ha servido bien al proceso administrativo”. Id., pág. 605. No obstante, las confu *196 siones del pasado no deben ser óbice para la corrección de las normas de nuestro derecho administrativo. Por el contrario, es deber de este Tribunal encaminar nuestro Derecho en los límites que imponen la Constitución y la ley.
Hoy resolvemos conforme a lo que dispone la Ley de Procedimiento Administrativo Uniforme. En nuestro sistema democrático de poderes separados, la facultad de formular política pública mediante la aprobación de las leyes no le corresponde a este Tribunal. “ ‘El juez es un intérprete, y no un creador.’ ” Alonso García v. S.L.G., 155 D.P.R. 91, 107 (2001), opinión disidente del Juez Asociado Señor Rivera Pérez, citando Clínica Juliá v. Sec. de Hacienda, 76 D.P.R. 509, 521 (1954). El poder de la Rama Judicial se circunscribe a resolver casos y controversias según la Constitución y las leyes vigentes. Al ejercer esa función, ausente un choque del estatuto con la Constitución, venimos obligados a aplicar la ley aunque discrepemos personalmente de su sabiduría. En otras palabras, “los motivos que inspiren una actividad legislativa legítima no son objeto apropiado de escrutinio judicial”. Córdova y otros v. Cámara Representantes, 171 D.P.R. 795 (2007). Ese es el sendero democrático que la Constitución reconoce. Hacer lo contrario sería usurpar las prerrogativas de la Rama Legislativa y establecer una tiranía judicial.
La aclaración que hoy hacemos persigue evitar confusión e incertidumbre, y busca determinar de manera objetiva quiénes son partes en el procedimiento administrativo. La informalidad que ha regido ese trámite hasta el presente permite que se cuestione la legitimación de los recurrentes y ha creado una incertidumbre respecto a quiénes hay que notificar una solicitud de revisión judicial. Véase Lugo Rodríguez v. J.P., supra, opinión disidente del Juez Asociado Señor Rebollo López. Ahora bien, como esa informalidad procesal ha imperado hasta el presente, los requisitos for-males que ahora reconocemos aplicarán solamente de manera prospectiva.
*197 C. Según el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 6031 del Departamento de Estado, 13 de octubre de 1999 (el Reglamento), una “Consulta de Ubicación” se define, en lo pertinente, como sigue:
Consulta de Ubicación — Es el procedimiento ante la Junta de Planificación, para que se evalúe, pase juicio y tome la determinación que estime pertinente, sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreaá zonificadas, pero que las disposiciones reglamentarias proveen para que se consideren por la Junta de Planificación. En áreas no zonificadas, incluye propuestos usos de terrenos que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social, pudiesen afectar, significativamente, el desarrollo de un sector. ... See. 2.00(7) del Reglamento, pág. 5.(1)
Por su parte, el Reglamento dispone un término de caducidad para los acuerdos sobre las consultas de ubicación de centros comerciales de cien mil pies cuadrados o más:
Centro Comercial — Conforme lo dispone la Ley 91 del 20 de junio de 1998, en los casos en que se apruebe una consulta de ubicación para la construcción de un centro comercial de cien mil (100,000) o más pies cuadrados de área neta de ventas por la Junta de Planificación, dicha aprobación, tendrá una vigencia de treinta (30) meses, a partir de la notificación de la aprobación de la consulta de ubicación por la Junta de Planificación, dentro de cuyo término el centro comercial, deberá estar en real y efectiva construcción. Disponiéndose, que una vez transcurrido el término de treinta (30) meses antes mencionado, sin que el centro comercial se encuentre en real y efectiva construcción, la aprobación correspondiente perderá vigencia. La Junta no aprobará prórroga o reapertura alguna que se presente a los fines de solicitar una extensión al término de vigencia de la consulta de ubicación aprobada .... See. 10.01 del Reglamento, pág. 43.
El reglamento define el concepto “real y efectiva construcción” como sigue:
*198 Real y Efectiva Construcción — El inicio de las obras de urbanización y construcción permanente de una estructura sobre el terreno, como el vaciado de la losa de piso o de cimientos, el hincado de pilotes, la construcción de columnas, o cualquier obra más allá de la etapa de excavación; o la colocación de una casa manufacturada en sus cimientos. See. 2.00(30) del Reglamento, pág. 11.
En la Exposición de Motivos de la Ley Núm. 91 de 20 de junio de 1998 (1998 (Parte 1) Leyes de Puerto Rico 301-303), la Asamblea Legislativa manifestó que el término aludido persigue “combatir la especulación de terrenos sobre los cuales se persigue la aprobación de proyectos que finalmente no se desarrollan y en cuyo periodo se compromete la construcción” de proyectos a gran escala y, por lo tanto, “[e]stas situaciones impactan negativamente la economía del país”.
En FW Assoc. v. Junta de Planificación, 175 D.P.R. 339 (2009), tuvimos la oportunidad de expresarnos sobre el término de caducidad en el cual una consulta de ubicación aprobada tiene que estar en “real y efectiva construcción”. En esta decisión reconocimos que el factor tiempo se debe a que las condiciones físicas, económicas y sociales que analiza la Junta de Planificación son de carácter cambiante. Estos términos estatutariamente establecidos no exigen que la construcción se haya terminado en el tiempo fijado, sino que se realicen “actos dirigidos a ejecutar las obras autorizadas en el plazo dispuesto...”. Id., pág. 358. En aquella ocasión, decidimos que las obras de excavación, movimiento de tierra y vaciado de cemento para la construcción de cimientos en un área ínfima a la proyectada en la consulta de ubicación no eran suficientes para llenar el requisito de “real y efectiva construcción”. Esta instalación de cimientos no era parte de un proceso de construcción continuo que preservara los esfuerzos de planificación de la Junta, por lo que no podía ser considerada en el término de caducidad. Este análisis se hizo mediante el contexto de una construcción de cimientos en un espacio de mil seis *199 cientos pies cuadrados en un proyecto de más de cuatrocientos cincuenta mil pies cuadrados.
Según la Sec. 4.02 del Reglamento Núm. 6031, supra, págs. 19-20, una persona que solicite mía consulta de ubicación para un proyecto comercial debe presentar la información siguiente: la categoría del proyecto, su descripción, su armonía con la política pública, así como el impacto del comercio en la economía de la región y en la infraestructura existente y propuesta.
La Sec. 7.01 del Reglamento, págs. 26-29, obliga a la Junta de Planificación a evaluar la consulta solicitada según las exigencias legales y de política pública. Esta sección faculta a la Junta de Planificación a consultar, cuando lo considere necesario, a organismos de gobierno y a otras entidades públicas y privadas, para evaluar el proyecto bajo estudio. Además, esta disposición autoriza a la Junta de Planificación a solicitarle al proponente información adicional a la sometida, cuando lo estime necesario. La solicitud “podrá incluir, entre otras”, estudios técnicos avanzados, “tales como, pero sin limitarse” a: estudios hidrológicos-hidráulicos, nivel de ruido, tránsito, evaluaciones ambientales y declaraciones de impacto ambiental o determinación de impacto ambiental no significativo, o cualquier otro documento ambiental que se estime pertinente Id. Además, la Junta de Planificación tiene la autoridad para celebrar vistas administrativas o públicas cuando las entienda necesarias. Id.
Sobre las enmiendas a una consulta de ubicación, el Reglamento dispone, en lo pertinente:
Consideración de Enmiendas a Consultas — De surgir la necesidad de hacer cambios a un proyecto que altere la consulta aprobada, se deberá someter una solicitud de enmienda a la Junta explicando en detalle la naturaleza de la enmienda y la razón para la misma, así como toda documentación (planos, estudios, etc.), pertinente y necesaria para que la Junta pueda tomar la determinación correspondiente. Dicha solicitud deberá someterse en la Oficina del Secretario de la Junta. No obstante, lo anterior, la Junta de Planificación podrá solicitar *200 cualquier otra información necesaria que estime pertinente para considerar la enmienda. Como resultado de la evaluación de los cambios propuestos y dependiendo de la naturaleza y magnitud de los mismos con relación a la consulta original, la Junta podrá requerir la radicación de una nueva consulta y el cobro correspondiente .... Sec. 7.02 del Reglamento, págs. 29-30.
III
Las peticionarias plantean: primero, que Mil y PCC eran partes interventoras en la consulta de ubicación impugnada y que la falta de notificación de los procesos ante la Junta de Planificación anuló el trámite seguido; segundo, que no procedía aprobar la cuarta enmienda, pues no se sometieron estudios económicos y una nueva declaración de impacto ambiental; tercero, que para la cuarta enmienda, la consulta de ubicación se encontraba caducada y, por su magnitud, debió tramitarse como una nueva consulta de ubicación, y cuarto, que la resolución en la que se aprobó la cuarta enmienda no cumplió con las exigencias de la L.P.A.U.
A. El escrito presentado por Mil y PCC el 28 de diciembre de 1998, no cumplió con las exigencias de la L.P.A.U., en cuanto a las solicitudes de intervención. Para que se entienda sometida una solicitud de intervención, la See. 3.5 de la L.P.A.U., supra, exige que ésta sea por escrito y “debidamente fundamentada”. En su moción, Mil y PCC se limitaron a oponerse a la consulta de ubicación sin fundamentar su solicitud de intervención. La Junta de Planificación no tenía una solicitud de intervención ante su consideración, pues no se sometió una conforme a derecho. La propia disposición de la L.P.A.U. establece una serie de factores que han de ser considerados por una agencia para conceder o denegar una solicitud de intervención.
Las peticionarias no pusieron a la Junta de Planificación en posición de acoger el escrito como una so *201 licitud de intervención. Según el escrito intitulado “Comparecencia de Interventores”, Mil y PCC parten de la premisa de que son parte interventora, sin antes cumplir con los requisitos que exige la L.P.A.U. Para que se entienda sometida una solicitud de intervención es necesario que ésta se fundamente. A manera de ejemplo y de forma no taxativa, la See. 3.5 de la L.P.A.U., supra, establece criterios para guiar la discreción de una agencia en la adjudicación de una solicitud de intervención. Evidentemente, sólo hay que demostrar los factores que apliquen al caso, pero siempre hay que poner a la agencia en posición de resolver. “Después de todo, nuestro sistema es uno adversativo de derecho rogado que descansa en la premisa de que las partes, cuidando sus derechos e intereses, son los mejores guardianes de la pureza de los procesos, y de que la verdad siempre aflore.” S.L.G. Lloréns v. Srio. de Justicia, 152 D.P.R. 2, 8 (2000). La persona o entidad que pretenda intervenir en un proceso administrativo debe establecer en su solicitud hechos suficientes que permitan a la agencia evaluar su interés y relevancia en el asunto. Las peticionarias no cumplieron con este requisito.
Esta decisión es cónsona con opiniones previas de este Tribunal. Hemos resuelto que “Q]a liberalización efectuada no equivale, sin embargo, a sancionar la intervención indiscriminada ni a sentar el principio de que toda duda posible debe resolverse a favor de la intervención”. Chase Manhattan Bank v. Nesglo, Inc., 111 D.P.R. 767, 770 (1981). Véase, también, Rivera v. Morales, supra, pág. 689. No debemos confundir al participante en un procedimiento administrativo con el interventor. Las peticionarias tuvieron la oportunidad de participar en el procedimiento administrativo. Estas acudieron a la vista pública y presentaron su posición por escrito. Esto es muy diferente a señalar que las peticionarias fundamentaron una solicitud de intervención según lo exige la L.P.A.U. El hecho de que una persona tenga información que pudiera ser útil en el *202 proceso administrativo no le convierte ipso facto en parte interventora.
De una lectura de la L.P.A.U. se puede apreciar fácilmente que una persona que desee ser considerada parte debe demostrar “su capacidad o interés en el procedimiento”. Sec. 1.3(e) de la L.P.A.U., supra. Sólo así la agencia puede aplicar los criterios enumerados en la See. 3.5 de la L.P.A.U., supra. Las peticionarias no cumplieron con ese deber, que constituye un paso indispensable para tomar un escrito como una solicitud de intervención. Referente a la consulta solicitada, las peticionarias sugieren en su escrito la necesidad de una “presentación adecuada de su efecto económico”, ya que “un centro comercial impacta decisivamente a los negocios existentes y amenaza su estabilidad”. Apéndice de la Petición de certiorari, pág. 90. Estas generalidades y otras, como la viabilidad económica del proyecto, o si es necesario o no otro centro comercial en Santa Isabel, fueron discutidas por las peticionarias en calidad de participantes en el proceso, pero no en calidad de interventoras. Tanto es así, que la Junta de Planificación, en su resolución de 10 de febrero de 1999, expresó que las peticionarias comparecieron para oponerse por escrito al proyecto y no se les calificó como interventoras. Esto quiere decir que la Junta de Planificación aceptó la participación de las peticionarias, cosa muy distante a reconocerlas como partes interventoras. Esta decisión fue notificada a las peticionarias y éstas no recurrieron de dicha determinación. Así, pues, todas las partes confiaron en la decisión de la agencia de que las peticionarias no eran partes en el proceso administrativo.
Por ser necesario para la resolución completa de este caso, es preciso determinar si Mil y PCC debieron ser notificadas de las primeras tres solicitudes de enmiendas y de sus resoluciones en calidad de participantes activas. De éstas cumplir con los requisitos del participante activo, no *203 nos cabe duda de que en tal calidad debieron ser notificadas de toda solicitud de enmienda y de las resoluciones emitidas por la Junta de Planificación como exigencia del debido proceso de ley. Ese problema no se da en cuanto a la cuarta enmienda, porque para ese proceso las peticionarias fueron aceptadas como interventoras y notificadas como tal. Ahora bien, en cuanto al proceso para considerar las primeras tres enmiendas en la consulta, Mil y PCC no fueron certificadas como partes interventoras y reclamaron ante nosotros que debieron ser notificadas de las solicitudes y resoluciones, pero no lo fueron. Según el estado de derecho vigente, como Mil y PCC no fueron aceptados como interventores (porque incumplieron con el requisito de solicitarlo por escrito debidamente fundamentado), esta notificación sólo procedería si se les considerara participantes activas. De un estudio detenido del expediente, ni siquiera según la norma imperante hasta hoy se puede considerar a las peticionarias como participantes activas en el proceso. Antes de su comparecencia por escrito, la participación de Mil y PCC se limitó a comparecer a la primera audiencia pública en la que solamente solicitaron un plazo de diez días para someter su oposición por escrito. De la resolución surge que sus planteamientos fueron atendidos debidamente y sopesados por la Junta de Planificación. Mil y PCC sólo comparecieron a una audiencia pública y sometieron mi escrito en oposición al proyecto, mientras ACB compareció a los procesos avanzados para impugnar la cuarta enmienda. Hay que señalar que del expediente surge que Mil y PCC fueron notificadas de la resolución original en la que se aprobó la consulta de ubicación, de la vista que ha de celebrarse para la segunda enmienda y su resolución, y de la resolución en la que aprobó la tercera enmienda a la consulta de ubicación. No demostraron tener un interés que pudiera ser afectado adversamente por la decisión administrativa. La mera notificación de resoluciones o copias de cortesía no convierten a *204 una persona o entidad en parte. Junta Dir. Portofino v. P.D.C.M., supra.
A pesar de haber tenido estas oportunidades para participar activamente en el proceso, Mil y PCC no procuraron defender sus contenciones. Al no solicitar reconsideración o revisión judicial, estas resoluciones advinieron finales y firmes.
El 5 de diciembre de 2003, la Junta de Planificación emitió un acuerdo aprobatorio para permitir una cuarta enmienda a la propuesta original. Luego, las peticionarias presentaron ante la Junta de Planificación la “Moción de Reconsideración, Intervención, Oposición, Revocación y Desestimación de Consulta de Ubicación”. Apéndice de la Petición de certiorari, pág. 93. En ella, las peticionarias pretendieron justificar su solicitud de intervención al demostrar cómo la consulta podía afectar sus intereses. Posteriormente, la Junta de Planificación concedió la intervención de las peticionarias, se reafirmó en su determinación y les notificó sobre el remedio disponible de revisión judicial. Dicho derecho fue ejercido por las peticionarias, lo que trae ante nuestra consideración la impugnación de la cuarta enmienda aprobada por la Junta de Planificación.
B. Debidamente atendido el primer señalamiento de error, pasemos a evaluar la corrección de la actuación de la Junta de Planificación. Partimos de la premisa de que su corrección se presume. Rebollo v. Yiyi Motors, supra; Henríquez v. Consejo Educación Superior, supra.
Las peticionarias alegan que la Junta de Planificación no consideró la documentación necesaria para permitir la cuarta enmienda. Señalan que la Junta de Planificación venía obligada a exigir estudios económicos y una declaración de impacto ambiental para conceder la cuarta enmienda. No le asiste la razón.
Surge del expediente que la Junta de Planificación consideró todos estos criterios y esa evaluación merece una *205 deferencia que no ha sido refutada por las peticionarias. Según dispone la Sec. 7.02 del Reglamento, supra, para considerar una enmienda a una consulta aprobada es discreción de la Junta de Planificación establecer qué tipo de documentación es necesaria para su evaluación. Las peticionarias no presentan hechos constitutivos de abuso de discreción por parte de la Junta de Planificación que nos mueva a eliminar su criterio especializado. íd.
La Junta de Planificación celebró dos vistas públicas para autorizar el proyecto comercial, que después de las enmiendas, tenía un área superficial de ciento sesenta mil pies cuadrados. La Junta de Planificación autorizó esta área superficial mediante resolución de 30 de noviembre de 2000. Mil y PCC fueron notificadas y no recurrieron de ella. En este proceso, la Junta de Planificación contó con la participación de la Autoridad de Acueductos y Alcantarillados, la Compañía de Aguas de Puerto Rico, el Departamento de Agricultura, la Autoridad de Energía Eléctrica, el Departamento de Recursos Naturales y Ambientales, la Autoridad de Carreteras y Trasportación, y el Municipio de Santa Isabel (que sometió el Plan de Ordenación Territorial), entre otras entidades y personas.
Además, la Junta de Calidad Ambiental evaluó la determinación de impacto ambiental no significativo preparado por la Junta de Planificación y certificó el cumplimiento con la Ley Sobre Política Pública Ambiental, Ley Núm. 9 de 18 de julio de 1970 (12 L.P.R.A. see. 1121 et seq.), vigente en ese momento. Esta certificación se hizo dos veces. La última fue para la enmienda que se autorizó el 30 de noviembre de 2000. Ya para esta fecha, la construcción se estimaba en un área de ciento sesenta mil pies cuadrados, cuestión que no se varió con la cuarta enmienda. Esta enmienda se limitó a redistribuir el uso comercial del proyecto. Con el beneficio de un expediente completo, la Junta de Planificación evaluó y autorizó la cuarta enmienda según los parámetros en ley.
*206 Una consulta aprobada puede ser enmendada. Este proceso es gobernado por la Sec. 7.02 del Reglamento, supra, titulada “Consideración de Enmiendas a Consultas”, y no por la Sec. 7.01 del Reglamento, supra, que va dirigida a nuevas consultas. En forma explícita, la citada Sec. 7.02 le otorga discreción a la Junta de Planificación para solicitar documentos adicionales a los ya sometidos para la consulta original o prescindir de ellos. Solicitarle a quien somete la consulta todos los estudios originalmente presentados no era necesario, sería una carga onerosa y no lo exige la ley ni el reglamento. Es insostenible la contención de que toda enmienda requiere la presentación de los documentos y estudios que ahora imaginemos prudentes desde este Tribunal. No podemos revisar responsablemente estos ex-tremos sin hacer referencia fiel a la reglamentación vigente. La Junta de Planificación utilizó su especialización para identificar la información adicional necesaria. En ausencia de abuso de discreción no podemos intervenir con esa decisión.
A falta de prueba suficiente para refutar la presunción de corrección que cobija una determinación administrativa, concluimos que no se cometieron los errores aludidos.
C. Arguyen las peticionarias ACB, Mil y PCC que para la cuarta enmienda, la consulta de ubicación se encontraba caducada y que procedía urna nueva consulta de ubicación.
Como señalamos, se exige que el proyecto consultado se encuentre en “real y efectiva construcción” en el término de treinta meses dispuesto por ley y reglamento, y que exista un proceso de construcción continuo. FW Assoc. v. Junta de Planificación, supra. La consulta de ubicación original se aprobó el 10 de febrero de 1999 y se notificó el 18 de febrero siguiente. Según el plazo provisto en el reglamento, el proyecto debió estar en “real y efectiva construcción” para el 18 de agosto de 2001. El edificio de sesenta mil pies cuadrados añadido por enmienda es parte integral del proyecto, por lo que le aplica el mismo término de caducidad que al proyecto *207 original. Ésta es la interpretación de la Junta de Planificación sobre el estatuto a su cargo. Como no es irracional la interpretación de la Junta de Planificación, le debemos deferencia a esta apreciación administrativa. Id.
En su resolución de 30 de noviembre de 2000, la Junta de Planificación certificó que el proyecto se encontraba en construcción. Desde entonces, el proyecto siguió un proceso continuo de construcción, tanto así, que para el 7 de noviembre de 2003, se informó que se tenían construidos unos 58,739 pies cuadrados, de los cuales 29,723 pies cuadrados se encontraban ocupados por un supermercado. No estamos ante una construcción ínfima como ocurrió en FW Assoc, v. Junta de Planificación, supra. En definitiva, no son suficientes las alegaciones de las peticionarias, sin más, para controvertir una determinación de la Junta de Planificación.
La Sec. 7.02 del Reglamento concede a la Junta de Planificación la discreción para determinar si concede la enmienda propuesta o solicita la presentación de una nueva consulta. Cónsono con lo anterior, la Junta de Planificación permitió la cuarta enmienda y no requirió de los proponentes la presentación de una nueva consulta. No vemos un abuso de su discreción al así actuar.
La resolución que aprobó la cuarta solicitud de enmienda debe ser considerada en conjunto con las demás solicitudes y resoluciones. Por eso se le denomina enmienda.(2) La Junta de Planificación entendió que los cambios solicitados en la última solicitud de enmienda eran razonables y que no desvirtuaban la consulta originalmente hecha ni sus resoluciones anteriores. Esta conclusión no constituye un abuso de discreción. No debemos ser apáticos o irreverentes con las reglas de respeto y deferencia en la revisión judicial de las decisiones de las *208 agencias administrativas. Esa ha sido la tradición de este Tribunal hasta ahora y lo seguirá siendo. Como la resolución que permitió la cuarta enmienda es conforme a derecho y cumple con los parámetros en ley, procede confirmar la sentencia del Tribunal de Apelaciones que convalidó la decisión de la Junta de Planificación.

<

Así pues, por los fundamentos expuestos, se confirma la sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez disintió con una opinión escrita, a la que se unieron el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.

 Un lenguaje similar se utilizó en el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Núm. 5244 de 25 de marzo de 1995, derogado por el Reglamento Núm. 6031.

 La palabra “enmienda” significa: “[p]ropuesta de variante, adición o reemplazo de un proyecto, dictamen, informe o documento análogo.” (Énfasis suplido.) Real Academia Española, Diccionario de la Lengua Española, 22ma ed., Madrid, 2001, Ed. Espasa Calpe, T. I, pág. 921.