Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ESCAMBRÓN UNIDO, INC., ROSA VARGAS, KAREN VEGA, BLANCA ROSA ROVIRA BURSET, EDNA NAZARIO, PATRICIA MALLEY, ABADHA LILA CINTRÓN, JAIME BOFILL, PEDRO CARDONA ROIG Y GRUPO TORTUGUERO 7 QUILLAS SAN JUAN, INC.<br><br>Recurrentes<br><br>v.<br><br>OFICINA DE GERENCIA DE PERMISOS<br><br>Recurridos<br><br>THE NORMANDIE OZ, LLC.<br>Proponente Recurrido<br><br>MUNICIPIO DE SAN JUAN<br>Agencia proponente Recurrida | KLRA202500233 | Revisión Judicial de Determinación Administrativa procedente de la Oficina de Gerencia de Permisos (OGPe) del Departamento de Desarrollo Económico (DDEC)<br><br>Sobre:<br>Consulta de Ubicación 2022-429877-CUB-011411<br><br>Determinación de Cumplimiento Ambiental 2021-415945-DEA-300020 |

Panel especial integrado por su presidenta, la Juez Brignoni Mártir[1], el Juez Candelaria Rosa[2] y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece Escambrón Unido, Inc., la señora Rosa Vargas, la señora Karen Vega, la señora Blanca Rosa Rovira Burset, la señora Edna Nazario, la señora Patricia Malley, la señora Abadha Lila Cintrón, el señor Jaime Bofill, el señor Pedro Cardona Roig y Grupo Tortuguero

---

[1] Mediante OATA-2025-060, emitida el 2 de mayo de 2025, se designó un Panel Especial para atender el recurso de epígrafe debido a la inhibición de la Hon. Grace M. Grana Martínez.
[2] De conformidad con la Orden Administrativa JP-2018-035, sec. 3.3(2) se designó al Hon. Carlos I. Candelaria Rosa, Juez Ponente en el recurso de epígrafe.

7 Quillas San Juan, Inc. (conjuntamente "recurrentes") vía revisión judicial y solicitan que revoquemos la *Resolución de Consulta de Ubicación* de la Oficina de Gerencia de Permisos (OGPe), emitida el 1 de abril de 2025. En dicho dictamen, OGPe autorizó la consulta de ubicación de la corporación The Normandie OZ, LLC (Normandie OZ). Por los fundamentos que expresaremos, desestimamos el recurso por falta de jurisdicción.

En síntesis, el caso de epígrafe trata de consulta de ubicación para un área costanera. Según el expediente, el 11 de noviembre de 2024, la corporación The Normandie OZ, LLC (Normandie OZ) presentó ante la Oficina de Permisos del Municipio Autónomo de San Juan la solicitud de Consulta de Ubicación Núm. 2022-429877-CUB-011411, la cual fue luego elevada a la OGPe el 5 de diciembre de 2024, al esta haberse designado como un Proyecto Estratégico por el Comité Ad Hoc para Proyectos Estratégicos al amparo del Artículo 84 de la *Ley para Simplificar y Transformar el Proceso de Permisos*, Ley Núm. 19-2017 (23 LPRA sec. 9018c nota). Además, Normandie OZ solicitó restaurar la estructura del edificio del Hotel Normandie mediante reducciones e inclusiones de habitaciones y pisos, variación en las distancias requeridas en la Zona Marítimo Terrestre (ZMT) y los espacios de estacionamiento. Igualmente, Normandie OZ propuso revitalizar, en conjunto con el Municipio de San Juan (Municipio), el Parque del Tercer Milenio y el Parque Sixto Escobar. Esto es, mediante la Ordenanza Núm. 5, Serie 2022-2023, del 2 de septiembre de 2022, el Municipio expresó el interés de éste y Normandie OZ de garantizar el acceso directo a la playa por parte del público en general en toda la propiedad del Escambrón, además de dicho Municipio acceder a

arrendar a Normandie OZ ciertas porciones de terreno situadas dentro de la referida propiedad del Escambrón para la rehabilitación y el mejoramiento del estacionamiento a beneficio del interés público.

Mediante una evaluación inicial del proyecto, el 28 de febrero de 2024, la OGPe emitió su *Determinación de Cumplimiento Ambiental para Evaluación Ambiental* y en la cual concluyó que ninguna de las acciones propuestas como parte del proyecto ocasionará algún detrimento o riesgo al medio ambiente, al igual que el diseño respeta el entorno costanero y los bienes de dominio público de la ZMT que lo delimita en su extremo norte. Además, la OGPe determinó que el proyecto respetará el acceso público a los recursos de playa que colindan con el mismo e incorporarán mejoras a los accesos existentes.

Ahora bien, en su *Memorial Explicativo* para la Consulta de Ubicación 2022-429877-CUB-011411, Normandie OZ explicó que, luego del Departamento de Recursos Naturales (DRNA) recomendar dejar la faja de veinte (20) metros de separación para uso público y Normandie OZ solicitar reconsideración al considerar dicha faja de índole privada, entre otros trámites procesales, la corporación presentó una *Respuesta a Primera Subsanación* y en la cual explicó que (1) todas las estructuras y componentes a desarrollarse están fuera de las servidumbres de litoral y salvamento; y (2) el proyecto propone la eliminación y/o modificación de las estructuras existentes ubicadas previamente dentro de las servidumbres de litoral y salvamento, con el fin de reubicarlas fuera de dicha área.

Entre tanto, el 30 de diciembre de 2024, los recurrentes presentaron una *Moción de Intervención* ante la OGPe, la cual OGPe resolvió ha lugar. En resumidas cuentas, estos interventores tienen un

interés invocado de (1) mantener los espacios públicos abiertos y accesibles al mayor número de personas; (2) proteger el ambiente y los animales marinos; (3) conservar ciertos negocios, programas y/o actividades físicas o educativas en el área en controversia; y (4) asegurarse que el agua potable que proviene de una estación de bombas de la Autoridad de Acueductos y Alcantarillados (AAA) no sea interferida.

Evaluados todos los documentos presentados y la solicitud de intervención de los recurrentes, la OGPe emitió una *Resolución de Consulta de Ubicación* y determinó que la Junta de Planificación consideró favorable la solicitud sobre consulta de ubicación, más autorizó la variación al parámetro de estacionamientos requeridos para el Hotel Normandie y de patio lateral izquierdo para el área del Sixto Escobar. Claro, la OGPe condicionó a Normandie OZ cumplir con, entre otros, las recomendaciones de la Determinación de Cumplimiento Ambiental para Evaluación Ambiental y aquellas presentadas por otras agencias concernidas.

Insatisfechos con la *Resolución de Consulta de Ubicación*, los recurrentes—con los mismos fundamentos de intervención que presentaron en su *Moción de Intervención*—acuden ante este Tribunal y alegan que la OGPe erró al (1) aprobar la consulta de ubicación sin celebrar vistas públicas; (2) aprobar dicha consulta sin cumplir con los requisitos del Reglamento Conjunto; (3) emitir una resolución aprobando la consulta de ubicación que no está debidamente fundamentada; y (4) aprobar la consulta sin requerir una Declaración de Impacto Ambiental (DIA).

En oposición—en resumidas cuentas y en lo pertinente a nuestra determinación—Normandie OZ, la OGPe y el Municipio argumentan que (1) los recurrentes carecen de legitimación activa; (2) el Tribunal de Apelaciones debe diferir a la determinación de la agencia; (2) por su naturaleza expedita, los proyectos estratégicos no tienen la obligación de celebrar una vista; (3) las variaciones propuestas son insignificantes, pero necesarias para la preservación y disfrute del derecho de propiedad del Hotel Normandie y el Parque del Escambrón; (4) la División de Cumplimiento Ambiental (DECA) -la división que cuenta con la pericia para evaluar el *Memorial Explicativo*- determinó que no era necesario solicitar una DIA para el proyecto propuesto; y (5) los recurrentes omiten alegaciones específicas sobre los daños, lo cual confirma que, aún si en efecto hubiese sido necesaria una DIA, ello no constituiría un daño irreparable o un error que amerite la revocación de la determinación final.

Vale recordar que la jurisdicción es "el poder o autoridad con que cuenta un tribunal para considerar y decidir los casos y las controversias". *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020) (citando a *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019)). En función de ello, los tribunales deben constatar su jurisdicción y carecen de discreción para asumirla si no la poseen. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374 (2020) (citando a *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012); *SLG Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882) (2007)). Como consecuencia, cuando un tribunal determina que carece de jurisdicción, lo único que puede hacer es declararlo y desestimar el caso. *Cancel Rivera v. González Ruiz*, 200 DPR 319 (2018). Una sentencia dictada

sin jurisdicción es nula en derecho y se considera inexistente. *Shell v. Srio. Hacienda*, 187 DPR 109 (2012). Ante dicho escenario, la Regla 83 del *Reglamento del Tribunal de Apelaciones* contempla la desestimación o denegación de un recurso por carecer de jurisdicción para atenderlo en sus méritos. Véase Regla 83(B) y (C) del Tribunal de Apelaciones (4 LPRA Ap. XXII-B).

De otra parte, nuestro ordenamiento jurídico permite la autolimitación jurídica de la legitimación activa de quienes acuden a los tribunales a vindicar sus derechos. *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011) (citando a *Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559 (1989)). De esta manera, el promovente de la acción podrá presentar su causa y así traerá a la atención del tribunal las cuestiones en controversia sobre la cual esta tendrá dominio y jurisdicción, incluyendo aquellas que involucren consideraciones ambientales, recreativas, espirituales o estéticas. Íd. (citando a *Hernández Torres v. Hernández Colón*, 131 DPR 593 (1992)); *Fund. Surfrider y otros v. ARPe*, 178 DPR 563 (2010) (citando a *Salas Soler v. Srio. de Agricultura*, 102 DPR 716 (1974)). Por otro lado, ante el cuestionamiento de la legitimación activa de una parte, el juzgador deberá tomar como ciertas las alegaciones de hechos del reclamante e interpretarlas de la manera más favorable a ésta. Íd. (citando a *Crespo v. Cintrón*, 159 DPR 290 (2003)). A base de esto, si una parte carece de legitimación activa, el foro judicial no contará con la jurisdicción necesaria para atender en los méritos el caso. *Lozada Sánchez et al. v. JCA*, 184 DPR 898 (2012).

A la luz de lo anterior, cualquier persona interesada en participar del proceso de evaluación de determinaciones finales, así como

cualquier otro proceso adjudicativo, deberá presentar una solicitud de intervención. Art. 15.2 de la Ley Núm. 161-2009 (23 LPRA sec. 9025a). Véase, también, Sec. 3.5 de la Ley Núm. 38-2017 (3 LPRA sec. 9645); Secs. 2.1.10.8 y 7.1.9.1 del Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, *supra*, págs. 36 y 505. Se considerará como parte a la persona interventora. Sec. 1 de la Ley Núm. 38-2017 (3 LPRA sec. 9603). De la agencia determinar la necesidad de celebrar una vista adjudicativa, ésta podrá citar a todas las partes e interventores, *motu proprio* o a petición de las partes, a una conferencia con antelación a la vista. Íd., sec. 9647. Sin embargo, la mera remisión de una copia de cortesía por una persona o entidad, o la notificación de la resolución de una agencia a determinada persona natural o jurídica, no convertirá a dichas personas en partes en el proceso administrativo. *JP Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177 (2009) (citando a *Junta Dir. Portofino v. PDCM*, 173 DPR 455 (2008); *Ocean View v. Reina del Mar*, 161 DPR 545 (2004)).

No obstante, las agencias tienen un ámbito de discreción amplio por la flexibilidad de sus procedimientos, por lo que la participación en el proceso administrativo no necesariamente requiere los presupuestos de legitimación activa requerido en los Tribunales. Por consiguiente, la admisión como interventor en un proceso administrativo no le asegura a tal interventor que posea la legitimación activa necesaria y requerida para la eventual intervención judicial. *Fund. Surfrider y otros v. ARPe*, *supra* (citando a D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2.ª ed., Bogotá, Ed. Forum, 2001, pág. 500).

Por tanto, el interventor que pretenda presentar un recurso de revisión judicial ante el Tribunal de Apelaciones deberá demostrar (1) no solo ser parte, sino (2) estar adversamente afectado por la decisión administrativa. Íd. En otras palabras, una parte tendrá legitimación activa solamente cuando (1) sufrió un daño claro y palpable; (2) el referido daño es real, inmediato y preciso; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada; y (4) la causa de acción surge bajo el palio de la Constitución o de una ley. *Asoc. Fotoperiodistas v. Rivera Schatz*, *supra* (citando a *Lozada Tirado et al. v. Testigos de Jehová*, 177 DPR 893 (2010)). A razón de ello, cualquier alegación especulativa o conclusiva sobre los posibles efectos de cierto tipo de proyecto administrativo no será suficiente para evidenciar el referido efecto adverso. *Fund. Surfrider y otros v. ARPe*, *supra*.

Igualmente, si una asociación comparece en defensa de sus intereses, ésta deberá demostrar una daño claro, palpable, real, inmediato y preciso, en vez de uno abstracto o hipotético a su colectividad. Íd. De la asociación litigar a nombre de sus miembros, ésta deberá demostrar que (1) el miembro tiene legitimación activa para demandar a nombre propio; (2) los intereses que se pretenden proteger están relacionados con los objetivos de la organización; y (3) la reclamación y el remedio solicitado no requieren la participación individual. Íd. (citando a *Col. Ópticos de PR v. Vani Visual Center*, *supra*).

En el presente caso, los recurrentes carecen de la legitimación activa necesaria para recurrir ante este Tribunal de Apelaciones. Del expediente se desprende que estos meramente presentaron sus preocupaciones por los posibles efectos que el proyecto de construcción

de Normandie OZ tendría sobre el acceso público, el medioambiente, las variadas actividades del área de la playa detrás del hotel y en cuanto al agua potable del acueducto al que aluden. Es decir, más allá de tal preocupación, ninguno de los interventores—incluyendo los miembros individuales de las asociaciones—especificó el modo concreto en que el proyecto de construcción de Normandie OZ afectaría el acceso, el medioambiente, la continuación de los programas o negocios aludidos, o la viabilidad de las tuberías de agua potable en cuestión. Peor aún, en caso alguno articularon el modo en que dicho detrimento teórico les suponían un daño particular, claro y palpable; que el mismo les resultara real, inmediato y preciso; y que existiera una conexión entre tal daño y la causa de acción ejercida a la luz del ordenamiento jurídico.

Por tanto, ante la ausencia de exposición concreta sobre la especificidad de los daños particulares sufridos, los recurrentes no cumplieron con la demostración de legitimación activa para recurrir ante este Tribunal, según dispuesto en la jurisprudencia vigente, particularmente *Fund. Surfrider y otros v. ARPe*, *supra*., por lo cual carecemos de la jurisdicción requerida para atender la controversia en sus méritos.

Por los fundamentos expresados, desestimamos el recurso por falta de jurisdicción.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones